### IN RE SHAUN B.*
### (AC 26269)

DiPentima, McLachlan and Hennessy, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued February 17—officially released August 22, 2006

*David B. Rozwaski*, for the appellant (respondent mother).

*Renee Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

HENNESSY, J. The respondent mother appeals from the judgment of the trial court rendered in favor of the petitioner, the commissioner of children and families, terminating her parental rights with respect to her

minor child.[1] The respondent claims that the court improperly found that (1) she had failed to rehabilitate herself, (2) there was no parent-child relationship and (3) it would be in the best interest of the child to terminate her parental rights. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to our discussion and resolution of the issues on appeal. The child was born to the respondent on April 27, 2001. On July 3, 2002, on the basis of a report from the staff at a shelter where the respondent and the child were residing, the petitioner invoked a ninety-six hour hold,[2] removed the child from the shelter and placed him in foster care. On July 5, 2002, the petitioner filed in the Superior Court a petition alleging that the child was neglected and uncared for, and a request for an order of temporary custody alleging that he was in immediate physical danger from his surroundings. The court granted the motion for an order of temporary custody, and that order was affirmed by the court on July 12, 2002. At a hearing, the respondent entered a denial of the allegations in the petition, which alleged that the child was neglected in that the child was (1) being denied proper care and attention physically, educationally, emotionally or morally, and (2) being permitted to live under conditions, circumstances or associations injurious to his well-being. The respondent also denied the allegation that the child was uncared for in that he was homeless. Thereafter followed a case status conference, a judicial pretrial conference, a competency evaluation of the respondent in which she was

[1] The court also terminated the parental rights of the respondent father. Because he has not appealed, we refer in this opinion to the respondent mother as the respondent.

[2] Pursuant to General Statutes § 17a-101g (c) and (d), the petitioner, if she has probable cause to believe that a child is in imminent risk of physical harm, may remove a child and hold the child for up to ninety-six hours while seeking an order of temporary custody from the court.

found to be competent, a rescheduling of the trial date at the request of the respondent's attorney, a further postponement of the trial when the respondent was unavailable because she was incarcerated in New York, a hearing on a permanency plan proposed by the petitioner, a second pretrial and, more than one year later on July 29, 2003, an admission by the respondent to the allegation that the child was uncared for in that he was homeless. The neglect allegations contained in the petition were dismissed. The child was adjudicated uncared for, committed to the petitioner and continued in his foster care placement.

On August 14, 2003, the petitioner filed a petition to terminate the respondent's parental rights. The petitioner alleged that (1) the child had been found in a prior proceeding to have been neglected or uncared for, and that the respondent had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the child's age and needs, the respondent could assume a responsible position in his life, and (2) there was no ongoing parent-child relationship between the child and the respondent. A contested hearing was held on June 10 and July 15, 2004, and on October 29, 2004, the respondent's parental rights were terminated on the grounds alleged in the petition. It is from this judgment that the respondent appeals.

"The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest

of the child." (Citation omitted.) *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995).

In the matter before us, the petitioner alleged that pursuant to General Statutes § 17a-112 (j) (3) (B) (ii), the respondent had failed to rehabilitate herself. " 'Personal rehabilitation' as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." *In re Migdalia M.*, 6 Conn. App. 194, 203, 504 A.2d 533, cert. denied, 199 Conn. 809, 508 A.2d 770 (1986). In conducting this inquiry, the trial court must "analyze the respondent's rehabilitative status as it relates to the needs of the particular child . . . ." *In re Luis C.*, 210 Conn. 157, 167, 554 A.2d 722 (1989).

The court found the following. The child, who was born on April 27, 2001, came to the attention of the department of children and families (department) on May 13, 2002, when it received a referral from a women's shelter that the respondent was inappropriately disciplining the child. The respondent told the investigating worker that she was overwhelmed and in need of assistance. The respondent was discharged from this shelter as a result of confrontational behavior. The department, on July 3, 2002, received a referral from another shelter, Life Haven, Inc., in which the respondent and the child were residing. The staff at Life Haven, Inc., reported that the respondent, while residing there with the child, had on several occasions not filled a prescription for the child and left the child unattended multiple times. As a result, the petitioner then sent an investigative worker to meet with the respondent again. The worker found the respondent to be mentally unstable, irrational, crying uncontrollably and expressing self-mutilation and suicidal ideation.

The respondent then requested that the petitioner take the child because she could not care for him. As

a result of the respondent's confrontational behavior toward the staff and peers, allegations of abuse of the child and impending homelessness, the petitioner invoked a ninety-six hour hold, took custody of the child, sought an order of temporary custody, filed a petition alleging neglect and placed the child in a foster home. The order of temporary custody ultimately was affirmed by the court and, at that hearing, specific steps were set forth by the court in order to give the respondent guidance in achieving reunification with the child. The specific steps included cooperation in keeping appointments arranged by the department, keeping the department informed as to the respondent's whereabouts, securing and maintaining adequate housing, avoiding involvement with the criminal justice system, cooperating with any court-ordered evaluation or testing, cooperating with recommended parenting and family counseling services, and visiting the child as permitted by the department. During the next year, the child remained in foster care while the parties negotiated a resolution of the neglect petition. On July 29, 2003, the respondent admitted to the allegation in the petition that the child was uncared for. As a result, the petitioner withdrew the remainder of the allegations. The court adjudicated the child uncared for, committed the child to the petitioner and ordered that the specific steps set forth at the time that the order of temporary custody was issued continue in place.

The court found that during the adjudicatory phase of the contested hearing on the termination of parental rights, the respondent remained homeless and transient, failed to keep the department apprised of her whereabouts on occasion and did not attend a twelve week anger management group to which she had been referred. The court also found that the respondent, although offered treatment, counseling and medication

to address her depression, failed to appear for appointments on so many occasions that the services offered at the Hospital of Saint Raphael's adult outpatient psychiatric unit were not effective because workers there were not able to manage the respondent's needs for medication.

Although the respondent had not complied with many of the specific steps ordered by the court, she did visit the child on a fairly regular basis. On April 15, 2003, during one of her visits with the child, the respondent forcibly took the child, threatened a social worker and placed the child in a waiting car. The respondent then took the child to New York City for a period of two weeks, finally turning herself in to the police, who, after arresting her, returned the child to the petitioner. The respondent has been incarcerated in Connecticut since that time,[3] and she is awaiting disposition of the criminal charges pending against her.

On August 14, 2003, the petitioner filed a petition requesting that the respondent's parental rights with respect to the child be terminated. The court granted the petition, which is the subject matter of this appeal.

I

The respondent claims that the court improperly found that she failed to rehabilitate herself pursuant to § 17a-112 (j) (3) (B) (ii). She claims, specifically, "that the [petitioner] has not demonstrated a sufficient need or a compelling reason to warrant the termination of [the respondent's] parental rights."

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a

[3] The respondent was incarcerated on April 28, 2003, and was subject to a protective order prohibiting contact with the child.

conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Citations omitted; internal quotation marks omitted.) *In re Gary B.*, 66 Conn. App. 286, 289, 784 A.2d 412 (2001). "A determination by the trial court under § [17a-112 (j) (3) (b) (ii)] that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) *In re Felicia D.*, 35 Conn. App. 490, 500, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994).

The respondent does not challenge the facts found by the court, but rather argues that she regularly visited the child, accepted health services, participated in parenting classes and was willing to accept further services as required. She contends that the reasoning set forth in *In re Migdalia M.*, supra, 6 Conn. App. 203, is applicable in her situation. In *In re Migdalia M.*, we held that "[i]f . . . parents of a child with developmental disabilities have parenting limitations but love their child, consistently express an interest in the child's welfare, and periodically visit with the child committed to foster care, parental rights should not be terminated unless the effect on the child is detrimental, since the situation affords the child both the consistency of foster parenting and the relationship with natural parents." Id., 207–208.

The court found the following facts relevant to the respondent's claim. On May 13, 2002, the child was one year old and was residing with the respondent in a women's shelter. During the next two months, the respondent was asked to leave two shelters because of noncompliance with shelter rules and confrontational

behavior toward staff and peers. During this same period, the respondent was referred to the department for leaving the child unattended, failing to fill prescriptions for the child and inappropriately disciplining him. The investigative worker for the department found the respondent "mentally unstable, irrational and crying uncontrollably [and] expressing self-mutilation and suicidal ideation." The respondent stated that she was overwhelmed and requested that the department take the child because she could not care for him. The petitioner took custody of the child on July 3, 2002, and the child has continued in foster care since that time.

The court reviewed compliance by the respondent with the specific steps ordered by the court at the time temporary custody of the child was granted to the petitioner. These steps were affirmed and made permanent at the time the child was found to be uncared for and committed to the petitioner. The respondent, pursuant to General Statutes § 46b-129 (d) (6), was informed that if she was to regain custody of the child, she had to comply with the specific steps set forth by the court. The court found that the respondent, prior to and after the child's commitment to the petitioner, had failed to provide stable and adequate housing for herself or the child, did not fully address mental health and anger management issues, did not cooperate with court-ordered evaluations, failed to keep her whereabouts known to the department and, as a result of forcibly removing the child from a foster home and taking him to New York until she surrendered herself and the child to the New York authorities, was arrested and incarcerated. The respondent, at the time of the contested hearing, faced felony charges and incarceration. The court further found that the respondent, in preparing for her criminal defense, was evaluated by a psychologist and a psychiatrist. She was diagnosed as experiencing

recurrent major depression and moderate and border-line personality disorder. As a result of these evaluations, it was recommended that the respondent undergo long-term, intensive, inpatient treatment in order to address her health issues.

The court additionally found that the respondent failed to take advantage of the services offered by the department, which would have enabled her to address the specific steps leading to regaining custody of her child, included within which were mental health and anger management programs. This failure led to her removing the child from the jurisdiction, arrest, incarceration, long-term separation from the child and the probability of imprisonment.

Our review of the record discloses that the court's conclusion that the petitioner had presented clear and convincing evidence that the respondent failed to rehabilitate herself within the meaning of § 17a-112 (j) (3) (B) (ii) is legally correct and factually supported.

## II

We next examine the dispositional phase to determine whether the petitioner proved by clear and convincing evidence that termination of the respondent's parental rights was in the child's best interest. The court, as required by § 17a-112 (k),[4] considered and

_____

[4] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with

made written findings in its memorandum of decision on the seven criteria set forth in the statute. In summary, the court found that the respondent had been referred to several programs to address her anger management and mental health problems, but failed to fully take advantage of them; specific steps ordered by the court to set forth that which had to be taken to facilitate the reunification of the respondent with the child were not followed, among which were maintaining adequate housing, keeping the department informed of her whereabouts, participating in parenting programs and not becoming involved in the criminal justice system. The respondent's abduction of the child resulted in the issuance of a protective order and incarceration, thereby preventing the respondent and the child from visiting and preventing the respondent from making any meaningful efforts to make it in the best interest of the child to reunite with him. Further criminal proceedings and therapy addressing the respondent's mental health problems militate against the child residing with the respondent in the foreseeable future.

The court reviewed the current situation and found the following. The child, who had speech developmental problems, had overcome them primarily as a result of the stability and warmth of his foster family. The child had been in foster care since May 13, 2002, and as a result of the respondent's disabilities, both legal and

whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions, and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

personal, the court concluded that the respondent's rehabilitation was not foreseeable within a reasonable time, and determined by clear and convincing evidence that it was in the best interest of the child that the parental rights of the respondent be terminated. After reviewing the record, we conclude that the court's judgment was not clearly erroneous.

### III

The respondent also claims that the court improperly found that there was no ongoing parent-child relationship between the respondent and the child pursuant to § 17a-112 (j) (3) (D). We decline to review that claim. "Because the statutory grounds necessary to grant a petition for termination of parental rights are expressed in the disjunctive, the court need find only one ground to grant the petition. Thus, we may affirm the court's decision if we find that it properly concluded that any one of the statutory circumstances existed." *In re Brea B.*, 75 Conn. App. 466, 473, 816 A.2d 707 (2003). Having concluded that the court properly found that there was clear and convincing evidence that the respondent failed to rehabilitate herself pursuant § 17a-112 (j) (3) (B) (ii), we need not address the respondent's remaining claim.

The judgment is affirmed.

In this opinion the other judges concurred.