# IN RE BRITTANY J. ET AL.*
## (AC 27457)

Bishop, DiPentima and Pellegrino, Js.

Argued January 11—officially released April 3, 2007

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Judith Jarrett-Smith*, pro se, the appellant (respondent mother).

*Raheem L. Mullins*, assistant attorney general, with whom were *Michael J. Besso*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Opinion*

PELLEGRINO, J. The respondent mother,[1] acting pro se, appeals from the judgments of the trial court rendered in favor of the petitioner, the commissioner of children and families, terminating her parental rights with respect to J, R, T and B, her four children. The respondent claims that the court improperly found that (1) she had failed to achieve sufficient rehabilitation and (2) it would be in the best interests of the children to terminate her parental rights. We affirm the judgments of the trial court.

In her brief, the respondent has not cited any case law nor any portions of the record to support her contention that the court improperly terminated her parental rights. Although it is the appellant's responsibility to provide an adequate record for review; Practice Book § 61-10; it is our policy to give leeway to pro se litigants regarding their adherence to the rules of this court. See *New Haven* v. *Bonner*, 272 Conn. 489, 497–98, 863 A.2d 680 (2005). We, under most circumstances, are not willing to abide a complete disregard for the orderly presentation of issues on appeal; nonetheless, in this matter, we feel compelled to reach the merits of the respondent's claims.

In its comprehensive memorandum of decision filed January 20, 2006, the court, *C. Taylor, J.*, recited the

---

[1] The court also terminated the parental rights of the respondent fathers, but they are not parties to this appeal. We therefore refer in this opinion to the respondent mother as the respondent.

following facts and procedural history. On September 10, 2002, the respondent was involved in a motor vehicle accident. At the time of the accident, three of her children were in the car. The respondent admitted to a state police trooper that she could not get an operator's license because she had epilepsy, she had not taken her seizure medication that morning and that she knew she should not be operating a motor vehicle with children in it, as she was prone to epileptic seizures. The trooper referred the matter to the department of children and families (department), which then referred the matter to an in-home treatment social services provider. On December 10, 2002, the respondent spoke to a program manager at the social services facility and indicated that she had thoughts of killing her children and herself. That same day, the petitioner took custody of the children.

On December 13, 2002, the petitioner obtained orders of temporary custody for the children from the court, *Jongbloed, J.,* and filed neglect petitions on behalf of the children. On April 24, 2003, Judge Jongbloed adjudicated the children neglected. The court then vacated the temporary custody orders as to the two oldest children, J and R. The court also ordered that the two younger children be committed to the custody of the petitioner. The court, however, ordered specific steps for the respondent, for the purpose of reunification with her children. Judge Taylor found that the respondent had failed to comply fully with all of Judge Jongbloed's ordered steps, with the exception of court-ordered evaluations or testing.[2]

_____

[2] Specifically, Judge Taylor found that the respondent did not fully comply with Judge Jongbloed's orders with regard to: (1) keeping all appointments set by or made with the department, (2) keeping the respondent's counsel, the children's guardian ad litem and the department aware of the respondent's whereabouts, (3) participating in parenting and individual counseling sessions, (4) accepting and cooperating with in-home support services provided by the department, (5) submitting to substance abuse evaluations and random drug tests requested by the department, (6) securing and maintaining

The respondent has a history of substance abuse and mental health issues. The petitioner presented her with various programs and opportunities to address both of those issues, as well as her parenting skills. The respondent's participation in those programs and her efforts to complete reunification steps were sporadic, and oftentimes her conduct toward personnel of the department was violent and verbally abusive. She was dismissed from one program due to her lack of attendance and from another program because of her abusive behavior. On two separate occasions, when the respondent went to the department to visit her children, law enforcement officers had to be called to remove her from the premises. She continued to test positive for marijuana use as late as May 11, 2004, which was several weeks after the department filed a permanency plan with the court, that called for J's and R's reunification with the respondent.

On April 15, 2005, the petitioner sought to terminate the parental rights of the respondent with respect to her four minor children,[3] alleging that the respondent, who had been found to have neglected the children, was unable or unwilling to benefit from the reunification efforts of the department and that, accordingly, her parental rights should be terminated pursuant to General Statutes § 17a-112 (j).[4]

adequate housing and employment, (7) abstaining from further involvement in criminal activity, (8) visiting the children as often as the department permitted and, more importantly, (9) following the recommendation of mental health providers. A court-appointed evaluator, James Connolly, indicated that he had diagnosed the respondent with bipolar disorder. He opined that "[the respondent's] failure to take her psychotropic medication kept her from taking advantage of medical advice. . . . [W]ithout treatment, [the respondent's] bipolar condition will worsen, and her outbursts will worsen."

[3] Initially, the petitioner only sought to terminate the respondent's parental rights with respect to the two youngest children, T and B. This initial petition was filed on November 8, 2004.

[4] General Statutes § 17a-112 (j) provides in relevant part: "The Superior Court . . . may grant a petition [for termination of parental rights] if it finds by clear and convincing evidence that (1) [the department] has made

After a hearing on the petition for the termination of parental rights, Judge Taylor stated: "This court concludes that [the respondent] has not corrected the factors that led to the initial commitment of her children. The clear and convincing evidence reveals that, from the date of the adjudication of neglect, through the date of commitment, the date of the filing of the [termination of parental rights] petition as to [J] and the date of the amendments to the [termination of parental rights] petitions as to the other children, and continuing through the time of trial, [the respondent] has not been effectively available to take part in her children's lives, and, based on her mental health issues, gross parenting deficits and her refusal to participate in mental health treatment and her failure to benefit from it, she will never be consistently available for them. . . . Her refusal to commit to her regimen of psychotropic medication has, unfortunately, condemned her to failure in terms of being a safe, nurturing and responsible parent. . . . [S]he has failed to demonstrate that, within a reasonable time considering her children's age, needs and special needs, she could assume a responsible position in their lives." (Citations omitted.)

Although the court acknowledged the strong bond between the respondent and her children, it nonetheless found that the respondent had exercised poor judgment with regard to her children and would continue to do so in the future and that the termination of her parental

reasonable efforts to . . . reunify the child with the parent . . . unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . (2) termination is in the best interest of the child, and (3) . . . (B) the child . . . (ii) is found to be neglected or uncared for . . . and the parent of such child has been provided specific steps to take to facilitate the return of the child to the parent . . . and has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

rights was in their best interests. The court rendered judgments accordingly, and this appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the applicable standard of review. "Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. . . . The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous. . . . On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Christian P.*, 98 Conn. App. 264, 268, 907 A.2d 1261 (2006).

"The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." (Internal quotation marks omitted.) *In re Shaun B.*, 97 Conn. App. 203, 206–207, 903 A.2d 246 (2006).

I

The respondent first claims that the court improperly concluded that she failed to achieve sufficient personal

rehabilitation. Specifically, she claims that she was taking her psychotropic medication and that she went to therapy sessions with Edward Bednar, a clinical therapist, who opined that the respondent was "committed to improving her mental health." She further claims that the department failed to use its resources to help her in her efforts to be reunified with her family. We are not persuaded.

The court found that as late as July, 2005, the respondent *"utterly refused* to comply with her psychotropic medication regimen." (Emphasis added.) Additionally, the respondent continued "to have outbursts and has behaved problematically throughout the pendency of this case. Although [the respondent] and her therapist testified that she began taking [her psychotropic medication in July, 2005, the respondent] had another outburst on [August 12, 2005], during a visitation" at the department.[5] As a result of her behavior, the police were called to remove her from the premises. The court also found the testimony of James Connolly, a court-appointed psychologist, to be more credible on this issue and noted that the respondent's "recent cooperation with her psychotropic medication regimen on the eve of trial is 'too little, too late' . . . ." The court further found that on the basis of the respondent's "history as well as her testimony at trial, [her decision to take the psychotropic medication] was forced, reluctant at best and subject to change at her whim."

Additionally, the respondent had ample time to use the support services provided by the department to rehabilitate herself so that she could be reunified with her children. Although the petitioner's custody of T and B, and subsequently J and R, began in December, 2002,

---

[5] As a result of this incident, the department notified the respondent that she would not be permitted to visit with J and R until she discussed the incident with the department. The respondent has "steadfastly refused" to discuss the incident and, as of the date of trial, still had not seen her children.

and May, 2003, respectively, the petitioner first filed for termination of parental rights in November, 2004, almost two years after T and B were placed under the petitioner's care. The court's memorandum of decision is replete with findings, supported by the record, concerning the department's efforts at reunification of the respondent with her children during that period of time and afterward. Some of the services provided to the respondent included anger management programs, visitation and parenting education programs, Toys for Tots, supportive housing services, a referral for vocational training and mental health services. The court, however, found that the respondent was either unwilling or unable to benefit from these reunification services. We conclude that the court's findings are, in light of the evidence in the entire record, not clearly erroneous.

## II

The respondent's next claim is that the court improperly concluded that the termination of her parental rights was in the best interests of her children. She notes that the children have expressed their desire to remain with her, rather than to be adopted. We disagree.

First, the children's desire to return home to live with the respondent was ambivalent at best. The record indicates that J is currently living in a foster home, and she has stated that she wanted to be adopted by her foster family. Further, the court found that "J has vacillated as to whether she wishes to live with the respondent." The same holds true for R because, at times, he also expressed a desire to return home with the respondent. Personnel with the department, however, observed R yelling at the respondent and telling her what to do. At one point during an altercation, he yelled at her and said that he was " 'going to kill her.' " Finally, the record reveals that T and B have indicated that they

want to remain in their current foster home, and they refer to their foster mother as " 'mom.' "

Second, we must reiterate the rule that a court must consider the best interests of the children when deciding whether parental rights should be terminated. *In re Shaun B.*, supra, 97 Conn. App. 206–207. The court found that "[c]ontinued foster care is detrimental to these children's development; they require a permanent home that is safe and nurturing." Additionally, the court found, by clear and convincing evidence, that the respondent "failed to improve her parenting ability to acceptable standards," and that "[s]he still lacks the ability to exercise sound and responsible judgment on behalf of the children . . . ." Under these circumstances, the court concluded that "to allow [the respondent] further time to rehabilitate herself, if that were possible . . . would not be in the best interests of [the children]." Making every reasonable presumption in favor of the court's ruling, we conclude that the court's findings were legally correct and factually supported and, thus, not clearly erroneous.

The judgments are affirmed.

In this opinion the other judges concurred.