IN RE JUSTIN F. ET AL.*
(AC 33747)
(AC 33752)
(AC 34197)

DiPentima, C. J., and Robinson and Borden, Js.

---

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued June 1—officially released July 18, 2012**

*Kimberly A.*, the appellant (respondent mother).

*Anthony L.*, the appellant (respondent father).

*Stephen G. Vitelli*, assistant attorney general, with whom, on the brief, were *Gregory T. D'Auria*, solicitor general, and *George Jepsen*, attorney general, for the appellee (petitioner).

*Hillary H. Horrocks*, for the minor children.

*Opinion*

BORDEN, J. The self-represented respondents, Kimberly A. and Anthony L., appeal from the judgments of

** July 18, 2012, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

the trial court terminating their parental rights as to Justin F. and Hailee L.[1] On appeal, the respondents claim that the court improperly terminated their parental rights. We disagree.

Justin and Hailee were removed from their parents' care on September 23, 2004, and an order of temporary custody was issued on September 27, 2004. The children were adjudicated neglected on December 1, 2005, following a contested trial. The commissioner of children and families (petitioner) subsequently filed a petition to terminate the respondents' parental rights, and, following a contested trial, the court denied the petition on April 18, 2007. On September 5, 2007, the court ordered specific steps. On January 18, 2008, the court denied the respondents' motion to revoke the commitment of their children. Thereafter, on November 25, 2008, the petitioner filed petitions to terminate parental rights. The court granted the petitioner's motion to amend the petitions on April 3, 2009. On September 20, 2010, a trial commenced. The court thereafter issued its memorandum of decision on August 3, 2011, terminating the parental rights of the respondents. This appeal followed. Additional facts will bet set forth as necessary.

Although the respondents generally claim that the court's termination of their parental rights was improper, it is quite difficult to discern from their brief the particular nature of their claims.[2] Nonetheless, in

[1] The respondents are the biological parents of Hailee. Kimberly A. and Jason W. are the biological parents of Justin. Jason W.'s parental rights to Justin were previously terminated in 2007. Both of the children resided with the respondents prior to the involvement of the department of children and families.

[2] For example, under the argument section of their table of contents, the respondents list twenty-four claims, and in their statement of issues they appear to combine these twenty-four into eight categories. An examination of the text of their brief, however, does little to make the specific claims listed any more comprehensible than they are in their summary formulations, and the oral argument before this court added nothing to their comprehensibility. Although we afford a good measure of leniency to self-represented

order to ensure that the judgments of termination of parental rights were legally justified, we have afforded a full review of the record and will discuss the findings of the trial court that are pertinent to its decision to terminate the parental rights of the respondents. Those findings involve the following issues: (1) the efforts of the department of children and families (department) to reunify the children with their parents; (2) the respondents' failure to achieve sufficient personal rehabilitation; (3) the finding of abandonment; and (4) the determination that termination is in the best interests of the children. That review fully satisfies us that the trial court, which issued a lengthy, detailed and well reasoned memorandum of decision, was justified in terminating the respondents' parental rights.

I

We first address the court's conclusion regarding the efforts of the department to reunify the children with their parents. As required by General Statutes § 17a-112 (j) (1), the court first considered whether the petitioner made reasonable efforts to reunify Justin and Hailee with the respondents. "To terminate parental rights under § 17a-112 (c), now (j), the department is required to prove by clear and convincing evidence that it has made reasonable efforts to reunify the children with the parent unless the court finds that the parent is unable or unwilling to benefit from reunification efforts. In accordance with § 17a-112 (c) (1), now (j) (1), the department may meet its burden concerning reunification in one of three ways: (1) by showing that it made such efforts, (2) by showing that the parent was unable or unwilling to benefit from reunification efforts or (3)

parties; see *Thompson* v. *Rhodes*, 125 Conn. App. 649, 651, 10 A.3d 537 (2010); we cannot construct arguments for them that cannot be reasonably gleaned from their brief. Furthermore, many of the claims identified by the respondents refer to prior proceedings in the case that have no relevance to the issues involved in this appeal. We therefore decline to review them.

by a previous judicial determination that such efforts were not appropriate." *In re William R. III*, 65 Conn. App. 538, 546, 782 A.2d 1262 (2001). "On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . A determination by the trial court . . . that the evidence is clear and convincing . . . will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Shaun B.*, 97 Conn. App. 203, 209–10, 903 A.2d 246 (2006).

The court found that the petitioner had met her burden concerning the reasonable efforts exercised by the department in two separate and distinct ways: (1) that the parents were unable or unwilling to benefit from reunification efforts; and (2) that the department made reasonable efforts to reunify the parents with their children. Our review of the record discloses that there was ample evidence to support the court's finding that the respondents were unable or unwilling to benefit from reunification services.

The court specifically found, "based upon the clear and convincing evidence recounted . . . that [the respondents] have been, and are, unwilling to benefit from reunification efforts." On September 5, 2007, the court provided the respondents with specific steps to assist them in reunifying with both Justin and Hailee.[3]

[3] The specific steps ordered by the court required the respondents to do the following: (1) to cooperate with one announced visit by the department to their home; (2) to keep the children's whereabouts, and their own, known to the department; (3) to cooperate with the children's therapy, including

The parents refused to adhere to the court's order in a multitude of ways. The record clearly reflects that they failed to (1) participate in their children's counseling, (2) engage in family therapy, (3) allow the department to make the single home visit required by the court order and (4) cooperate with the recommended in-home reunification service. Such evidence provides clear support for the court's conclusion that the parents were unwilling or unable to benefit from reunification efforts.[4]

## II

The court also found, as a basis for its decision, that the respondents had abandoned their children. A parent abandons a child if "the parent has failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child . . . . Abandonment focuses on the parent's conduct. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . . Section 17a-112 [(j)

any new therapists to which the department might refer them; (4) to accept and cooperate with any in-home support services referred by the department, including any specialist whose purpose is to facilitate reunification; (5) to cooperate with Boys & Girls Village as to the implementation of reunification services; (6) to sign any release allowing Boys & Girls Village to communicate with the department; (7) to maintain adequate housing and legal income, to not engage in substance abuse and to have no involvement with the criminal justice system; (8) to advise the department immediately of changes in the composition in the household; and (9) to visit the children as often as permitted by the department.

[4] The court also found that "the [department's] attempts to offer those services constituted a reasonable effort to reunify the children with their parents as mandated by statute." The court correctly noted, however, that since it concluded the respondents were unwilling to benefit from reunification efforts, according to "the provisions of § 17a-112 (j) (1), and the holding of the court in the case of In re Jorden R., [293 Conn. 539, 554, 979 A.2d 469 (2009)], [this court] is not required to make a factual finding in the present case that the [department] made reasonable efforts to reunify the family."

(3) (A)] does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern." (Citation omitted; internal quotation marks omitted.) *In re Ilyssa G.*, 105 Conn. App. 41, 46–47, 936 A.2d 674 (2007), cert. denied, 285 Conn. 918, 943 A.2d 475 (2008).

The court found that "[t]he evidence at trial proved that the respondents reasonably could have visited and personally interacted with the children by accepting the supervised visits that were offered by [the department] since September, 2008. The evidence at trial proved that the respondents could have reasonably displayed love and affection for the children by sending them presents and cards on their birthdays and at Christmas. The evidence at trial proved that the respondents reasonably could have cooperated with therapy for the children, and with the referral for in-home reunification services, as ordered by the court in September, 2007. The court finds that the respondents' failure to do those things was not reasonable."

The record clearly supports the court's finding of abandonment. Since the end of 2008, the department has offered the respondents visitation with both Justin and Hailee, and they have refused to visit with the children or even to respond to the department's offers. In fact, the respondents have failed to maintain any form of contact with either child since approximately July, 2008. Nor has there been any attempt by either parent to make any inquiries regarding the health of either child or to attend case reviews or treatment plan hearings. By the time the trial had concluded in August, 2011, the respondents had failed to have any contact with either child in close to three years.

## III

In regard to the court's finding that the respondents failed to achieve rehabilitation, § 17a-112 (j) (3) (B) provides for the termination of parental rights when the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding "has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ."

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [the parents have] achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [they] can assume a responsible position in [their] child's life." (Internal quotation marks omitted.) *In re Sarah Ann K.*, 57 Conn. App. 441, 448, 749 A.2d 77 (2000).

Thus, the inquiry for the court was whether the respondents achieved "such [a] degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child . . . ." General Statutes § 17a-112 (j) (3) (B). This inquiry required the court to obtain a historical perspective of the respondents' child caring and parenting abilities.

There was little or no evidence to suggest that the respondents had shown any indication that they can or would be able to assume a responsible position in the lives of their two children. In September, 2007, specific steps were ordered in an attempt to assist the parents in reunifying with their children. The court found, however, "that during the three years and nine months that have passed since September 5, 2007, the respondents have not participated in any of the therapeutic services mandated in [the September, 2007] amended specific steps orders,[5] with the exception of supervised visits prior to September, 2008. It was also proven that the respondents have not had any visits or other contacts with Justin and Hailee since September, 2008, despite repeated offers of third party supervised visitation by the petitioner since then, and despite the court's order that they should visit the children as often as permitted by [the department]." The court further noted that "[the] respondents do not recognize the very deleterious effect that their decision not to visit the children since September, 2008, has had upon Justin and Hailee. The therapists for both children testified credibly about the feelings of abandonment that are displayed by both children. Justin, in particular, experiences emotional upheaval that sometimes causes his behavior to deteriorate, when dates or events remind him about his mother and stepfather. The court finds the respondents' refusal to accept supervised visits, and their failure to have any contact with Justin and Hailee for the past 33 months, is clear and convincing evidence that [the respondents]

---

[5] Part of the order required that the respondents cooperate with the department for a home visit. The respondent father's response was combative, as he told the court: "I hope the cops are going to come and kick the door down because we ain't opening the door." The respondents never cooperated with this step. Furthermore, the respondents were ordered to involve themselves in the children's therapy and visit with the children as often as the department permitted. The respondents refused to follow either mandate issued by the court.

still demonstrate poor parental judgment, a significant lack of understanding about the needs of their children, and an inability to place the needs and requirements of their children ahead of their own." These findings are clearly supported by the record before us.

## IV

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . . In the dispositional phase . . . the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the children only if the court's findings are clearly erroneous." (Citations omitted; internal quotation marks omitted.) *In re Devon W.*, 124 Conn. App. 631, 648–49, 6 A.3d 100 (2010).

The court considered and made written findings regarding the factors set forth in § 17a-112 (k).[6] The

[6] General Statutes § 17a-112 (k) provides: "Except in the case where termination is based on consent, in determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to such child's parents,

department made a host of services available to facilitate the reunion of the children with the respondents. The department arranged and made available regular visitation, parenting programs and counseling. Clear expectations for the respondents were set forth but not met. The court considered the age of the children and their emotional ties with the respondents and their respective foster parents, as well as the frequency and quality of the respondents' visits with the children.

The court found that the children, who were approximately fourteen and eight years of age at the time of the trial and had been in foster care for the past six years, needed a permanent and stable environment. As the court observed: "Justin and Hailee have waited for a very long time while this litigation has winded its way through the courts. The psychological experts and the children's guardian ad litem all testified that Justin and Hailee both have very real and immediate emotional needs to have the issue of their permanent placement resolved as soon as possible." The court further noted that "[t]he evidence presented at trial strongly suggests that [Hailee's] foster parents, who wish to adopt the child and have functioned as her psychological parents for many years now, offer such a [permanent] home."

any guardian of the child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child; and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

We have reviewed the well written and thorough decision of the trial court and the evidence contained in the entire record. That review leads us to conclude that the court's finding that the termination of the respondents' parental rights is in the best interests of the children is supported by the evidence.

The judgments are affirmed.

In this opinion the other judges concurred.