# IN RE ALISON M. ET AL.*
## (AC 32359)

DiPentima, C. J., and Beach and Hennessy, Js.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

Argued December 15, 2010—officially released March 8, 2011

*Rosemarie T. Weber*, for the appellant (respondent mother).

*Benjamin Zivyon*, assistant attorney general, with whom, on the brief, were *Richard Blumenthal*, former attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Steven R. Dembo*, with whom were *Campbell D. Barrett*, and, on the brief, *Jon T. Kukucka*, for the appellee (intervenor maternal grandmother).

*Opinion*

DiPENTIMA, C. J. The respondent mother, Katherine M., appeals from the judgments of the trial court terminating her parental rights with respect to her twin minor children, Alison M. and Andrew M.[1] On appeal, the respondent claims that the trial court improperly (1) concluded that she was unable to benefit from reunification services, (2) found that she failed to achieve a sufficient degree of personal rehabilitation, (3) found that it was in the best interests of the children to terminate the respondent's parental rights, (4) denied the respondent's motion for a continuance, (5) precluded the respondent's therapist from offering expert opinion testimony and (6) allowed the intervening grandmother to participate in the trial beyond the scope of the dispositional phase.[2] We disagree with the respondent's claims and, accordingly, affirm the judgments of the trial court.

---

[1] The court also terminated the parental rights of the children's father. Because the father is not a party to this appeal, we refer in this opinion to the respondent mother as the respondent.

[2] We note that pursuant to Practice Book § 67-13, the attorney for the minor children filed a statement adopting in its entirety the brief filed by the department of children and families.

The following facts and procedural history are relevant to this appeal. The respondent first exhibited symptoms of mental health issues when she was a child and at times throughout her life has been hospitalized as a result of these issues. She has received treatment for depression and anxiety and has been diagnosed with alcoholism, panic disorder and bipolar disorder and has admitted to substance abuse. In 2005, the respondent voluntarily sought treatment at the Institute of Living at Hartford Hospital. While there, she met the children's father and became pregnant with the children.

In July, 2006, the respondent was living with her mother (grandmother) and stepfather (grandfather). The respondent twice had contacted the local police department and expressed concerns regarding her safety and that of the children. Upon investigation, the police learned that the respondent's behavior had become increasingly erratic and that she had been engaging in threatening behaviors. For example, she was screaming and banging on a piano in the middle of the night. Later that month, the police went to the grandmother's home where the respondent had injured herself but blamed the grandfather for her injuries. She was taken to a hospital for treatment.

On July 27, 2006, the petitioner, the commissioner of children and families (commissioner), filed petitions, claiming that the children had been neglected and sought orders of temporary custody. Specifically, the petitions alleged that the children were being denied proper care and attention, physically, educationally, emotionally or morally and that the children were being permitted to live under conditions, circumstances or associations injurious to their well-being. In addenda attached to the petitions, the commissioner further alleged that both the respondent and the children's father suffered significant mental health issues that negatively impacted their ability to provide appropriate

care and that they were unable or unwilling to provide a safe, stable and nurturing environment for the children. The court granted the commissioner's requests for orders of temporary custody. On August 1, 2006, the children were placed with the grandmother and grandfather, where they have remained ever since.[3] On October 4, 2006, the respondent entered a plea of nolo contendere to the neglect allegation. The court accepted the plea, adjudicated the children neglected and committed the children to the custody of the commissioner.[4]

In May, 2009, the commissioner filed petitions to terminate the parental rights of the respondent and the children's father.[5] The petitions alleged that the department of children and families (department) had made reasonable efforts to reunify the children and that the respondent was unable or unwilling to benefit from the reunification efforts. A trial was held in May, 2010. On May 26, 2010, the court issued its memorandum of decision terminating the respondent's parental rights.

The court found that the respondent had been compliant with and engaged in her treatment, had maintained

[3] The respondent made accusations that the grandmother and grandfather abused alcohol and that the grandmother had failed to protect her from the respondent's biological father when she was a child. As a result, the children initially were placed in foster care. After an investigation conducted by the department, it was determined that the respondent's concerns and allegations were unfounded, and the children were placed with the grandmother and grandfather.

[4] On August 4 and October 4, 2006, the court ordered specific steps for the mother, including: keeping all appointments with the department, cooperating with home visits, keeping her whereabouts known to the department, participating in counseling, submitting to substance abuse assessment, refraining from substance abuse, cooperating with court-ordered evaluations or testing, securing and maintaining adequate housing and visiting with the children as often as permitted.

[5] On May 10, 2010, the children's father voluntarily consented to the termination of his parental rights. After a canvass of the father, his guardian ad litem and his conservator, the court accepted the father's consent to the termination of parental rights.

her stability and had made "good, personal progress." The court further found that the respondent had "made measured, but insufficient progress" with respect to her parenting ability. The court noted that despite the respondent's "significant substance abuse history," she failed to disclose this information to her treatment providers and currently consumed alcoholic beverages. The respondent also omitted her "history of psychotic symptoms, [suicidal ideation] and significant interpersonal relationship issues," including those with her former husband and current roommate, Brian B. Notwithstanding Brian B.'s failure to cooperate with the department's efforts to assess his suitability as a resource for the respondent and the children, she continued to live with him, despite her claims of her intention to move out. Furthermore, the respondent provided inconsistent and contradictory reports regarding her ongoing relationship with Brian B. The court concluded that the respondent had not "demonstrated an ability to live independently and maintain a household for herself—let alone for herself and the children."

With respect to the adjudicatory phase,[6] the court found, by clear and convincing evidence, that the department had made reasonable efforts to reunify the respondent with the children. The court noted that the department had provided transportation, case management services and supportive housing referrals, therapeutic supervised visits, parent education and mentoring, substance abuse evaluations, couples counseling and mediation services, as well as individual counseling and therapy for the respondent. The court indicated that although the respondent participated in

---

[6] As set forth in greater detail later in this opinion, a hearing on a petition to terminate parental rights consists of adjudicatory and dispositional phases. *In re Shaun B.*, 97 Conn. App. 203, 206, 903 A.2d 246 (2006). In the former, the court considers whether a statutory basis for termination of parental rights exists while in the latter, the court determines whether termination is in the best interests of the children. Id., 206–207.

and benefited personally from these services, "she was unable to make progress in such a manner as to allow for her reunification with the children. [The respondent], despite the participation in services, has not been able to gain the ability to consistently and safely meet the needs of these young children. The court further finds, by clear and convincing evidence, [that the respondent] has been unable to benefit from reunification efforts to a degree sufficient to permit reunification with the children to occur now or in the reasonably foreseeable future." Later in its decision, the court iterated that the prospect of reunification in the foreseeable future was dim. Ultimately, the court concluded: "During the time this case has been pending and despite the availability of services, [the respondent] has, lamentably, been unable to demonstrate such a degree of personal rehabilitation as would encourage the belief that within a reasonable amount of time, considering the children's ages and needs, she could safely and consistently assume a responsible position in the life of these children." The court then found, by clear and convincing evidence, that the termination of the respondent's parental rights was warranted as a result of her failure to achieve sufficient personal rehabilitation.

In the dispositional phase of the proceeding, after weighing the seven factors of General Statutes § 17a-112 (k), the court found, by clear and convincing evidence, that termination of the parental rights of the respondent was in the best interests of the children. Accordingly, the court approved the department's permanency plans. This appeal followed. Additional facts will be set forth as necessary.

Prior to addressing the specific claims raised in this appeal, we note that a "hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . In the adjudicatory phase, the trial court determines whether one of the statutory

grounds for termination of parental rights . . . exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the parents' parental rights is not in the best interests of the child. In arriving at that decision, the court is mandated to consider and make written findings regarding seven factors delineated in . . . § [17a-112 (k)] . . . ." (Internal quotation marks omitted.) *In re Halle T.*, 96 Conn. App. 815, 823, 902 A.2d 670, cert. denied, 280 Conn. 924, 908 A.2d 1087 (2006).

I

The respondent first argues that the court's finding that she was unable to benefit from reunification services was clearly erroneous. The commissioner counters, inter alia, that this claim need not be reviewed because the respondent failed to challenge the trial court's finding that the department had made reasonable efforts to reunify her with the children. We agree with the commissioner.

Section 17a-112 (j) provides in relevant part: "The Superior Court, upon notice and hearing as provided in sections 45a-716 and 45a-717, may grant a petition filed pursuant to this section if it finds by clear and convincing evidence that (1) the [department] has made reasonable efforts to locate the parent and to reunify the child with the parent in accordance with subsection (a) of section 17a-111b, *unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts* . . . ." (Emphasis added.) In this case, the court expressly found, by clear and convincing evidence, that (1) the department had made reasonable efforts to reunify the respondent with

the children and (2) the respondent had been unable to benefit from reunification efforts to a degree sufficient to permit reunification to occur.[7]

Our Supreme Court recently addressed this issue in *In re Jorden R.*, 293 Conn. 539, 979 A.2d 469 (2009). The court, interpreting the language of § 17a-112 (j) (1), stated that "[b]ecause the two clauses are separated by the word 'unless,' this statute plainly is written in the conjunctive. Accordingly, the department must prove *either* that it has made reasonable efforts to reunify *or*, *alternatively*, that the parent is unwilling or unable to benefit from reunification efforts. Section 17a-112 (j) clearly provides that the department is not required to prove both circumstances. Rather, either showing is sufficient to satisfy this statutory element." (Emphasis in original.) Id., 552–53.[8] In the present case, the respondent has not challenged the court's finding that the department made reasonable efforts to reunify her with the children. This unchallenged finding provides an independent basis for meeting the requirement of § 17a-112 (j) (1). See id., 556.

Review of the respondent's challenge to the court's finding that she was unable to benefit from reunification efforts would be improper because it can not afford

---

[7] Specifically, the court stated: "The evidence is clear and convincing that the department made reasonable efforts to reunify [the respondent] with the children. . . . The court further finds, by clear and convincing evidence, [that the respondent] has been unable to benefit from reunification efforts to a degree sufficient to permit reunification with the children to occur now or in the reasonably foreseeable future."

[8] Put another way, the court must find that (1) the department made reasonable efforts to locate the parent and to reunify the child with the parent, *or* (2) the parent is unable or unwilling to benefit from reunification efforts *or* (3) both of these statutory requirements have been met. Accordingly, in this case, to show that the department failed to meet its burden with respect to § 17a-112 (j) (1), the respondent was required to demonstrate that there was not clear and convincing evidence of (1) the department's reasonable efforts to locate and reunify her with the children *and* (2) her inability or unwillingness to benefit from reunification efforts.

her any practical relief and therefore is moot. See id.,
557. "[*I*]*t is not the province of appellate courts to
decide moot questions, disconnected from the granting
of actual relief or from the determination of which
no practical relief can follow.*" (Emphasis in original;
internal quotation marks omitted.) Id., 556. We con-
clude, on the basis of the controlling precedent from
our Supreme Court, that the respondent's claim regard-
ing the trial court's finding that she was unable to bene-
fit from reunification efforts is moot because the
statutory requirements of § 17a-112 (j) were met by the
independent finding of reasonable efforts to reunify
made by the department. Accordingly, we decline to
review this claim.

## II

The respondent next claims that the court improperly
found that she failed to achieve sufficient personal reha-
bilitation. Specifically, she argues that the court's find-
ing was clearly erroneous. We are not persuaded.

Section 17a-112 (j) (3) (B) (ii) requires the court to
find by clear and convincing evidence that the "parent
. . . has been provided specific steps to take to facili-
tate the return of the child to the parent . . . and has
failed to achieve such degree of personal rehabilitation
as would encourage the belief that within a reasonable
time, considering the age and needs of the child, such
parent could assume a responsible position in the life
of the child" before the court may grant a petition to
terminate parental rights. The respondent focuses her
challenge on the personal rehabilitation requirement.
We are mindful that "[p]ersonal rehabilitation as used
in the statute refers to the restoration of a parent to
his or her former constructive and useful role as a
parent." (Internal quotation marks omitted.) *In re
Shaun B.*, 97 Conn. App. 203, 207, 903 A.2d 246 (2006).
Additionally, the court "must analyze the respondent's

rehabilitative status as it relates to the needs of the particular child . . . ." (Internal quotation marks omitted.) Id. Finally, we note that "[i]n assessing rehabilitation, the critical issue is not whether the parent has improved [her] ability to manage [her] own life, but rather whether [she] has gained the ability to care for the particular needs of the child [or children] at issue." (Internal quotation marks omitted.) *In re Emerald C.*, 108 Conn. App. 839, 853, 949 A.2d 1266, cert. denied, 289 Conn. 923, 958 A.2d 150 (2008); see also *In re Halle T.*, supra, 96 Conn. App. 838 n.18 ("[e]ven if a parent had made successful strides in her ability to manage her life and may have achieved a level of stability within her limitations, such improvements, although commendable, are not dispositive on the issue of whether, within a reasonable period of time, she could assume a responsible position in the life of her child" [internal quotation marks omitted]).

We begin by setting forth the applicable standard of review. "On appeal, we review a trial court's finding that a parent has failed to rehabilitate herself in accordance with the rules that apply generally to a trier's finding of fact. We will overturn such a finding of fact only if it is clearly erroneous in light of the evidence in the whole record. . . . We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached. . . . [O]n review by this court every reasonable presumption is made in favor of the trial court's ruling." (Internal quotation marks omitted.) *In re Alejandro L.*, 91 Conn. App. 248, 257–58, 881 A.2d 450 (2005). "A finding [of fact] is clearly erroneous when either there is no evidence in the record to support it, or the reviewing court is left with the definite and firm conviction that a mistake has been made. . . . [G]reat weight is given to the judgment of the trial court because of [the trial court's] opportunity to observe the parties and the evidence."

(Internal quotation marks omitted.) *In re Chevol G.*, 125 Conn. App. 618, 620, 9 A.3d 413 (2010).

The respondent argues that she was able to maintain her mental stability for a period of four years, specifically, by managing her bipolar disorder. Further, she points to specific statements made by Stephen M. Humphrey, a clinical psychologist who evaluated the respondent on several occasions and testified at the trial.

The respondent's argument, however, ignores evidence in the record that supports the court's finding regarding the failure to achieve sufficient rehabilitation. The court found that the respondent demonstrated personal progress, for example, by making her home safer and cleaner and by obtaining employment. Nevertheless, the court observed: "One cannot, however, confuse ability to care for oneself and the ability to care for one's children. [The respondent] has the desire and motivation to parent. 'Lamentably, motivation to parent is not enough; ability is required.' *In re G.S.*, 117 Conn. App. 710, 718, [980 A.2d 935, cert. denied, 294 Conn. 919, 984 A.2d 67 (2009)]. [The respondent] has not demonstrated that she has made sufficient progress with respect to her ability to parent the children."

Specifically, the court noted that in April, 2007, a parent educator observed that the respondent lost focus, lacked confidence and had difficulty with parenting tasks with the children, who were not yet mobile. The educator expressed a concern that "if there was an emergency or if one or both of the children were being difficult, that [the respondent] would not be up to the challenge of caring for them and resultantly they would be at risk." The court found that these concerns from 2007 existed at the time of its memorandum of decision.

The court stated that the respondent had been unable to balance the needs of the children with her own need

for rest and stress reduction. For example, the respondent acknowledged "becoming overwhelmed with anxiety and when she has been so, she has, at times, walked out on the children to compose herself." On one instance in July, 2009, the respondent planned to bathe the children, but when she noticed that it was getting dark outside, she abruptly left them alone in the bathroom. The court found that the respondent demonstrated the need for assistance with the children during three hour visits. As recognized by the court, "[t]his does not bode well for having twin toddlers in her care on an all-day, day-to-day basis." The court also indicated that the respondent had a subnormal support system and that her interfamilial relationships were marked with strife. Additionally, the court was concerned with the respondent's history of failing to report her medical conditions accurately. Last, the court relied on expert testimony from Humphrey that he was concerned about the respondent's ability to manage and to monitor the children independently and that, at the present time, she lacked the capacity to parent the children. As the court observed, it was free to give great weight to the opinion of a professional in a termination of parental rights proceeding. See *In re Emerald C.*, supra, 108 Conn. App. 860.

The court concluded: "The court finds [that the respondent] has not been able to address the myriad issues confronting her and has therefore failed to rehabilitate to a degree that she would be able to safely and adequately care for these children at this time or in the reasonably foreseeable future. . . . The linchpin to a determination of rehabilitation necessarily includes a finding that the parent can begin or resume parenting within a reasonable period of time. During the time this case has been pending and despite the availability of services, [the respondent] has, lamentably, been unable to demonstrate such a degree of personal rehabilitation

as would encourage the belief that within a reasonable amount of time, considering the children's ages and needs, she could safely and consistently assume a responsible position in the life of these children. . . . To be clear, the court has not reached this decision on the basis of [the respondent's] carrying a mental health diagnosis, but rather on her conduct and behavior."

On the basis of the record before us, we cannot conclude that the court's finding regarding the respondent's failure to achieve sufficient personal rehabilitation was clearly erroneous. There was sufficient evidence to support the court's finding and we are not left with a definite and firm conviction that a mistake has been made.

### III

The respondent next claims that the court improperly concluded that it was in the best interests of the children to terminate her parental rights.[9] Specifically, she argues that the court failed to consider (1) the nature of the relationship between the respondent and the children as it "relates to the children's interests in sustained growth, development, well-being, stability and the nature of their relationship with their mother," (2) the strain on the relationship between the respondent and the grandmother, and (3) the opinion of Humphrey that termination was not in the best interests of the children. We disagree.

---

[9] "After determining whether one of the statutory grounds for termination of parental rights under . . . § 17a-112 (j) exists by clear and convincing evidence, a judge is required to evaluate whether severing the legal tie between parent and child is in the child's best interest. That task is among the most sensitive and difficult with which a judge is charged. Although a judge is guided by legal principles, the ultimate decision to terminate parental rights is intensely human. It is the judge in the courtroom who looks the witnesses in the eye, interprets their body language, listens to the inflections in their voices and otherwise assesses the subtleties that are not conveyed in the cold transcript." *In re Davonta V.*, 98 Conn. App. 42, 43, 907 A.2d 126 (2006), aff'd, 285 Conn. 483, 940 A.2d 733 (2008).

"In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . It is well settled that we will overturn the trial court's decision that the termination of parental rights is in the best interest of the [child] only if the court's findings are clearly erroneous. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment. . . . In the dispositional phase of a termination of parental rights hearing, the trial court must determine whether it is established by clear and convincing evidence that the continuation of the respondent's parental rights is not in the best interest of the child. In arriving at this decision, the court is mandated to consider and make written findings regarding seven factors delineated in [§ 17a-112 (k)]. . . . The seven factors serve simply as guidelines for the court and are not statutory prerequisites that need to be proven before termination can be ordered. . . . There is no requirement that each factor be proven by clear and convincing evidence. . . .

"Pursuant to § 17a-112 (k), the statutory factors used to determine whether termination is in the child's best interest include: (1) The timeliness, nature and extent of services offered . . . (2) whether the [d]epartment . . . has made reasonable efforts to reunite the family . . . (3) the terms of any applicable court order entered into . . . and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents . . . and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest

of the child to return such child home in the foreseeable future . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child . . . or by the economic circumstances of the parent." (Citation omitted; internal quotation marks omitted.) *In re Jocquyce C.*, 124 Conn. App. 619, 628–29, 5 A.3d 575 (2010).

The court properly made findings pursuant to the mandated statutory factors. Initially, the court found that the department offered services to the children in a timely fashion and that it made reasonable efforts to reunite the family. It then stated that the children have love and affection for the respondent. "The children have further developed a warm, loving and caring relationship in the nature of a parent-child relationship with [the grandmother and grandfather]. They are meeting the children's needs on a consistent, day-to-day basis. [The grandmother] testified that if she is able to adopt the children, she is willing to do so. She also testified that she desires to keep [the respondent] involved in the children's lives. [The grandmother] has been fostering the relationship [that] the children have with [the respondent]." Additionally, the grandmother kept the paternal side of the family involved in the lives of the children.

Despite the bond between the respondent and the children, the court concluded that it was in the best interests of the children to terminate the respondent's parental rights. In reaching this conclusion, the court specifically considered "the totality of the circumstances surrounding the children, including their interest in sustained growth, development, well-being, stability, continuity of their environment, length of stay with [the grandmother and grandfather], the nature of their relationship between [the grandmother and grandfather] and biological parents, and the degree of contact

maintained with the biological parents. . . . The court has also considered that the attorney and guardian ad litem for the children advocated for the termination . . . ." (Citations omitted.)

The court's decision makes it clear that it considered the nature of the relationship between the respondent and the children. It noted that they shared a loving bond. Nevertheless, after examining the entire situation, the court found that termination was in the best interests of the children. As we recently observed, "[o]ur courts consistently have held that even when there is a finding of a bond between parent and a child, it still may be in the child's best interest to terminate parental rights. *In re Rachel J.*, 97 Conn. App. 748, 761, 905 A.2d 1271, cert. denied, 280 Conn. 941, 912 A.2d 476 (2006); see, e.g., *In re Tyqwane V.*, 85 Conn. App. 528, 536, 857 A.2d 963 (2004); *In re Ashley S.*, 61 Conn. App. 658, 667, 769 A.2d 718, cert. denied, 255 Conn. 950, 769 A.2d 61 (2001); *In re Quanitra M.*, 60 Conn. App. 96, 106, 758 A.2d 863, cert. denied, 255 Conn. 903, 762 A.2d 909 (2000)." (Internal quotation marks omitted.) *In re Rafael S.*, 125 Conn. App. 605, 613, 9 A.3d 417 (2010).

With respect to the respondent's claim that the court failed to consider the strain on the relationship between the respondent and the grandmother, we note: "In the dispositional phase of a termination of parental rights hearing, the emphasis appropriately shifts from the conduct of the parent to the best interest of the child. . . . The best interests of the child include the child's interests in sustained growth, development, well-being, and continuity and stability of [his or her] environment." (Citations omitted; internal quotation marks omitted.) *In re Janazia S.*, 112 Conn. App. 69, 97, 961 A.2d 1036 (2009); see also *In re Bruce R.*, 234 Conn. 194, 204, 662 A.2d 107 (1995) (during dispositional phase, focus is on best interest of child).

The court noted that the respondent and the grandmother had been working on improving their relationship.[10] Further, the grandmother testified that she wanted to keep the respondent involved in the children's lives. It is clear that the court did consider the relationship between the respondent and the grandmother in reaching its decision. Furthermore, the court considered all of the relevant factors in reaching its ultimate finding that termination of the respondent's parental rights was in the best interests of the children.

Last, the respondent argues that the court failed to consider the opinion of Humphrey that termination was not in the best interests of the children. In Humphrey's first report, dated April, 2007, he had indicated that while immediate reunification was not recommended, he thought that a gradual return to parenting would be the appropriate course of action. In his second report, dated December, 2007, Humphrey indicated that due to a variety of issues that had not been reported to him during his initial interview with the respondent, he did not recommend any increased visitation. He also indicated that the respondent's capacity for child care was "suspect."

Humphrey later testified: "My recommendation at the conclusion of my evaluation was that it would be counter to the children's best interest to move them from their current caretakers, which is [the grandmother and grandfather], but that it would also be counter to their interest for their relationship with [the respondent] to cease, and that, as you know, I had previously recommended mediation in a prior evaluatuion . . . and so my recommendation was that the children remain where they are but that over time that [the

---

[10] The court also stated: "Hopefully, [the respondent and the grandmother] will continue [to work on their relationship], as their success in maintaining a relationship will benefit the children."

respondent] be able to have an increasing role in their lives, hopefully, supported by continued mediation, if possible." Humphrey proposed an arrangement in which the children would remain with the grandmother and grandfather for a period of four years before the respondent attempted to regain sole responsibility for them. He noted that the respondent had a degree of capability for becoming the primary caretaker but that it would not be in the best interests of the children to pursue that option at the present time. He stated that he would be "very concerned about the children if [the respondent] was the primary caretaker as of today." He did not see the respondent as a viable option in "the foreseeable future." Humphrey concluded by stating: "This case has gone on quite a long time. It's not easy for the children to tolerate, even at three or four years old. There's a toll that takes on their caretakers. There is a need for a permanent resolution to this case, and that will benefit the children psychologically. I think it has to move out of this nebulous state into a clearly defined role for all the participants, and the children will benefit from that. Now, there are emotional, psychological, financial toll—there's a toll that this takes on the caretakers and, because of that, it ultimately filters down to the children. I think there has to be a resolution to the case."[11]

The respondent focuses on the portions of Humphrey's reports and testimony in which he noted the importance of maintaining a relationship between the respondent and the children. She, however, ignores his opinions, recited above, regarding the length of time it would take for her to be the caretaker of the children, as well as the stress that would be placed on the children from the uncertainty of extended litigation. "Although we often consider the testimony of mental health

---

[11] Humphrey subsequently testified that it would not be in the best interests of the children to be exposed to additional years of litigation.

experts . . . such expert testimony is not a precondition of the court's own factual judgment as to the child's best interest." (Internal quotation marks omitted.) *In re Rafael S.*, supra, 125 Conn. 615–16; see also *In re Davonta V.*, 285 Conn. 483, 489, 940 A.2d 733 (2008). Despite Humphrey's statements regarding the termination of the respondent's parental rights, our review of the record indicates clear and convincing evidence to support the court's finding. The court balanced Humphrey's opinions with the children's need for permanency,[12] their relationship with the grandmother and grandfather and the respondent's inability to stabilize her parenting behavior. See generally *In re Katia M.*, 124 Conn. App. 650, 658–59, 6 A.3d 86, cert. denied, 299 Conn. 920, 10 A.3d 1051 (2010). Given this record, we decline to disturb the court's finding that termination of the respondent's parental rights was in the best interests of the children.

## IV

The respondent next claims that the court improperly denied her motion for a continuance. Specifically, she

[12] Our Supreme Court "has noted consistently the importance of permanency in children's lives. . . . Virtually all experts, from many different professional disciplines, agree that children need and benefit from continuous, stable home environments. . . . [S]table and continuous care givers are important to normal child development. Children need secure and uninterrupted emotional relationships with the adults who are responsible for their care. 3 D. Kramer, Legal Rights of Children (2d Ed. Rev. 2005) § 29:11, p. 185; see also J. Goldstein et al., The Best Interests of the Child: The Least Detrimental Alternative (1996) p. 19 ([c]ontinuity of relationships is essential for a child's healthy development); see also *In re Hanks*, 553 A.2d 1171, 1178 (Del. 1989) ([N]o child can grow emotionally while in limbo, never really belonging to anyone except on a temporary and ill-defined or partial basis. . . . To grow, the child needs at least the promise of permanency in relationships and some continuity of environment. . . .). Repeatedly disrupted placements and relationships can interfere with the children's ability to form normal relationships when they become adults. 3 D. Kramer, supra, p. 185." (Citations omitted; internal quotation marks omitted.) *In re Davonta V.*, supra, 285 Conn. 494–95.

argues that the court violated her right to due process and abused its discretion by denying her a continuance to review certain records of the department. We are not persuaded.

The following additional facts are necessary for the resolution of this issue. On March 8, 2010, the court issued a scheduling order to the parties. Nothing in the order required the commissioner to provide any discovery materials to the respondent. On March 9, 2010, the respondent's prior counsel sent a letter to the department's New Britain office requesting "any and all records" pertaining to the case by April 9, 2010. In a document filed with the court, the respondent, on May 7, 2010, represented that she had yet to receive the discovery requested in the March 9, 2010 letter. Counsel further represented that she would be filing a motion for a continuance to review the discovery once she had received it.

On May 10, 2010, at the start of trial, the court considered the respondent's motion for a continuance. Counsel requested two days to review the materials, provided that she received them on May 10. The assistant attorney general represented to the court that the discovery letter was sent to the incorrect office and that it was the department's Manchester office that had been handling the case from its inception.

The court noted that the respondent's counsel could have been more proactive in seeking the commissioner's compliance with the discovery request. It then ruled: "I don't want to penalize [the respondent], but on the other hand, I have no doubt that you are an able advocate for her. So, I'm going to deny the request for continuance. I'm going to, however, allow you, if you need to, you can recall whatever witnesses you need to recall [in two days], and if we need to schedule another day after [that], we'll do that. So, we're going

to continue today with the witnesses that are on hand for today. If you have your witnesses for tomorrow, I think you said, clearly, you're already ready with your own witnesses. She should be able to get through them, and then [in two days], you can recall witnesses, if you need to, or you can have additional witnesses from your list, but I'm denying the request for a continuance, and we're going to go forward today." The court then ordered that all reasonable efforts be made to have the materials delivered to the respondent's counsel by lunch that day. Later, the respondent's counsel acknowledged on the record that she had received the requested discovery from the commissioner. Just prior to the conclusion of proceedings on May 10, 2010, the respondent's counsel inquired: "Your Honor, and I do have the right to recall the witnesses, as per my reading of the narratives?" The court responded in the affirmative.

On May 11, 2010, the respondent's counsel indicated that she was still reviewing the discovery materials, but, at that time, she did not anticipate recalling any witnesses. At the end of the day, she again indicated that her review of the discovery might require her to recall a witness, and the court replied: "Okay." The respondent's counsel never attempted to recall a witness as a result of her review of the discovery materials delivered to her on May 10, 2010.

On appeal, the respondent argues that the denial of the request for a continuance constituted both a violation of due process and an abuse of discretion. She concedes that the constitutional claim was not raised at trial and requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). The commissioner and the grandmother dispute the constitutional nature of the respondent's claim[13] and argue that the

---

[13] We note that our Supreme Court has certified the following question for review: "In a termination of parental rights proceeding, are the constitutional due process rights of the incarcerated respondent violated if said

court did not abuse its discretion in denying the continuance.

To prevail on the constitutional claim, the respondent must establish that "(1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [respondent] of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." (Internal quotation marks omitted.) *In re Alexander V.*, 25 Conn. App. 741, 743, 596 A.2d 934 (1991), aff'd, 223 Conn. 557, 613 A.2d 780 (1992); see also *In re Tremaine C.*, 117 Conn. App. 521, 529, 980 A.2d 317, cert. denied, 294 Conn. 920, 984 A.2d 69 (2009). The respondent has failed to demonstrate that a constitutional violation clearly exists and clearly deprived her of a fair trial, and, therefore, her constitutional claim must fail. See *In re Lukas K.*, 120 Conn. App. 465, 472, 992 A.2d 1142 ("In the absence of any one of [the *Golding* prongs], the [respondent's] claim will fail. The appellate tribunal is free, therefore, to respond to the [respondent's] claim by focusing on whichever condition is most relevant in the particular circumstances." [Internal quotation marks omitted.]), cert. granted on other grounds, 297 Conn. 914, 995 A.2d 955 (2010).

"The United States Supreme Court established a three-pronged balancing test in *Mathews* [v. *Eldridge*, 424 U.S. 319, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976)] to determine what safeguards the federal constitution requires to satisfy procedural due process. Courts apply

respondent is not provided with a trial transcript and an opportunity to recall witnesses prior to the conclusion of testimony?" (Internal quotation marks omitted.) *In re Lukas K.*, 297 Conn. 914, 995 A.2d 955 (2010); see also *In re Jaime S.*, 297 Conn. 915, 995 A.2d 954 (2010) (same), appeal dismissed, 300 Conn. 294, 12 A.3d 566 (2011).

that balancing test when the state seeks to terminate parental rights. *Santosky* v. *Kramer*, [455 U.S. 745, 754, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982)]; *In re Alexander V.*, [223 Conn. 557, 560, 613 A.2d 780 (1992)]. The three factors to be considered are (1) the private interest that will be affected by the state action, (2) the risk of an erroneous deprivation of such interest, given the existing procedures, and the value of any additional or alternate procedural safeguards, and (3) the government's interest, including the fiscal and administrative burdens attendant to increased or substitute procedural requirements. *Mathews* v. *Eldridge,* [supra, 335]. The bottom-line question is whether the denial rendered the trial fundamentally unfair in view of the *Mathews* factors." *In re Shaquanna M.*, 61 Conn. App. 592, 606, 767 A.2d 155 (2001); see also *In re Tremaine C.*, supra, 117 Conn. App. 529–30.

The respondent has a constitutionally protected interest in retaining her parental rights. *In re Tremaine C.*, supra, 117 Conn. App. 530; see also *In re Juvenile Appeal (Docket No. 10155)*, 187 Conn. 431, 436, 446 A.2d 808 (1982). A petition to terminate parental rights threatens this interest, and, therefore, the first *Mathews* factor weighs in favor of the respondent. See *In re Tremaine C.*, supra, 530; see also *In re Alexander V.*, supra, 223 Conn. 561.

The second *Mathews* factor, the risk of error regarding the loss of the respondent's parental rights, must be viewed in the circumstances of the present case. See *In re Juvenile Appeal (Docket No. 10155)*, supra, 187 Conn. 436–37. First, the record does not reveal the amount of discovery turned over to the respondent at the lunch break of the first day of trial. Additionally, the respondent has not demonstrated exactly what impact these materials would have had on the trial had they been disclosed earlier. Finally, we note that the court

indicated that the respondent's counsel would be permitted to recall any witnesses if necessary and that the respondent declined to take advantage of this opportunity. Accordingly, we conclude, on the basis of this record, that the risk of an erroneous deprivation under these circumstances is very low.

The third *Mathews* factor concerns the function involved and the fiscal and administrative burdens imposed by granting the continuance. "The government's function in seeking to terminate parental rights and place a child in an adoptive home is an aspect of its role as parens patriae. . . . This furthers the express public policy of this state to provide all of its children a safe, stable nurturing environment." (Citation omitted; internal quotation marks omitted.) Id., 439–40. Additionally "the state is . . . interested in the accurate and speedy resolution of termination litigation in order to promote the welfare of the affected child. . . . As [this court has] correctly noted, because of the psychological effects of prolonged termination proceedings on young children, time is of the essence. . . . Accordingly, we recognize that the state has a vital interest in expediting the termination proceedings . . . ." (Internal quotation marks omitted.) *In re Tremaine C.*, supra, 117 Conn. App. 534. This factor does not weigh heavily in favor of the commissioner, however, given the nature of the continuance sought by the respondent.

After carefully considering the three factors of the *Mathews* balancing test, we conclude that the court did not violate the respondent's due process rights by declining to grant the continuance. The respondent, therefore, has failed to establish that a constitutional violation clearly exists and clearly deprived her of a fair trial, and her claim fails under the third prong of *Golding*.[14]

[14] The respondent also requested plain error review of this claim. Having reviewed it pursuant to *Golding*, we are not persuaded that plain error

Further, the respondent has failed to persuade us that the court abused its discretion in denying the continuance. "A motion for continuance falls within the purview of the trial court's discretion which will not be upset absent a showing of clear abuse of that discretion. . . . Every reasonable presumption in favor of the proper exercise of the trial court's discretion will be made." (Citation omitted; internal quotation marks omitted.) *In re Cynthia A.*, 8 Conn. App. 656, 663, 514 A.2d 360 (1986).

The court noted the delay in obtaining the discovery and allowed the respondent the option of recalling witnesses. The respondent did not take advantage of this opportunity. Furthermore, we are mindful of the sparse record regarding the amount of discovery turned over to the respondent. Under these facts and circumstances, we cannot conclude that the court abused its discretion in denying the respondent's motion for a continuance.

V

The respondent next claims that the court improperly precluded the respondent's therapist from offering expert opinion testimony. Specifically, the respondent argues that the court improperly granted a motion in limine that precluded her therapist from offering expert testimony regarding her rehabilitation. We conclude that the record is inadequate to review this claim.

The following additional facts are necessary for the resolution of this claim. On May 7, 2010, the grandmother filed a motion in limine to preclude any of the witnesses who had been disclosed by the respondent from testifying as experts. She further argued that she was prejudiced by not being able to depose such expert

exists. See *State* v. *Jay*, 124 Conn. App. 294, 311 n.10, 4 A.3d 865 (2010), cert. denied, 299 Conn. 927, 12 A.3d 571 (2011).

witnesses.[15] On the first day of trial, the court deferred ruling on this motion until it became necessary to do so.

The respondent called Donna Nicolino, a licensed clinical social worker, as a witness. The respondent offered Nicolino as an expert witness in the field of cognitive behavioral therapy. At that time, counsel for the grandmother renewed the objection to Nicolino's testifying as an expert due to a lack of notice. The assistant attorney general, on behalf of the commissioner, joined in this objection. After hearing further argument, the court ruled as follows: "All right. I'm going to allow the witness to testify as a fact witness in this matter with regard to her role within the case. I'm not—I'm declining to qualify her as an expert. I'm granting the motion in limine with respect to this witness but allowing her to continue to testify." At that point, the questioning of Nicolino as a fact witness proceeded.

The respondent claims that the granting of the grandmother's motion in limine deprived her of a constitutional right. As this claim was not raised at trial, the respondent again seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40. We conclude that the record is inadequate for review, and, therefore, the respondent's constitutional claim fails.[16]

The respondent failed to make an offer of proof regarding what testimony Nicolino would have given, had the court permitted her to testify as an expert witness. "[A] proper offer of proof serves to inform the court of the legal theory under which the offered

[15] The grandmother conceded that the witnesses disclosed by the respondent should be permitted to testify as fact witnesses.

[16] "In the absence of any one of these conditions, the [respondent's] claim will fail. The appellate tribunal is free, therefore, to respond to the [respondent's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Internal quotation marks omitted.) *In re Tremaine C.*, supra, 117 Conn. App. 529.

evidence is admissible . . . [and] of the specific nature of the offered evidence so the court can judge its admissibility, *thereby creating an adequate record for appellate review. . . . The absence of an offer of proof may create a gap in the record that would invite inappropriate speculation on appeal about the possible substance of the excluded testimony.*" (Emphasis added; internal quotation marks omitted.) *Dinan* v. *Marchand*, 279 Conn. 558, 583, 903 A.2d 201 (2006); see also *State* v. *Martinez*, 295 Conn. 758, 771, 991 A.2d 1086 (2010).

On the basis of this record, we can only speculate as to what additional testimony Nicolino would have provided if permitted to testify as an expert. See *Schnabel* v. *Tyler*, 230 Conn. 735, 758 n.17, 646 A.2d 152 (1994). We are presented with an inadequate record to engage in *Golding* review of the respondent's claim.[17] For the same reason, we decline to review the respondent's claim that the court abused its discretion in granting the motion in limine. "It is incumbent upon the appellant to take the necessary steps to sustain its burden of providing an adequate record for appellate review. . . . [A]n appellate tribunal cannot render a decision without first fully understanding the disposition being appealed. . . . Our role is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. . . . Without the necessary factual and legal conclusions furnished by the trial court, any decision made by us respecting the defendant's claims would be entirely speculative." (Internal quotation marks omitted.) *Day* v. *Gabriele*, 101 Conn. App. 335, 348, 921 A.2d 692, cert. denied, 284 Conn. 902, 931 A.2d 262 (2007). Accordingly, this claim must fail.

---

[17] The respondent also requested review pursuant to the plain error doctrine. See Practice Book § 60-5. We conclude that because the record is inadequate for review under *Golding*, it is also inadequate for consideration under the plain error doctrine. See *State* v. *Bigelow*, 120 Conn. App. 632, 644–45, 994 A.2d 204 (2010), cert. denied, 297 Conn. 916, 996 A.2d 278 (2010).

## VI

The respondent's final claim is that the court improperly allowed the grandmother to participate in the trial beyond the scope of the dispositional phase. Specifically, she argues that, as a result of the grandmother's participation in the adjudicatory phase of the trial, the respondent was deprived of a fair trial. We are not persuaded.

The court granted the grandmother permission to intervene on August 3, 2006. On the first day of trial, the court stated on the record: "My understanding is that the grandmother was permitted to intervene for dispositional purposes." On several occasions during the proceedings, the respondent raised an objection that the grandmother's counsel was engaging in issues that concerned the adjudicatory phase, rather than the dispositional phase.

On appeal, the respondent argues that the grandmother improperly was permitted to file the motion in limine to preclude Nicolino's expert testimony. This claim is without merit because the commissioner joined in that motion, and, as detailed in part V of this opinion, the record is inadequate to determine the content of Nicolino's testimony. The respondent also argues that "on at least five (5) occasions during the course of the trial, counsel for [the respondent] objected to [the grandmother's] participation in [the] trial on the basis that it went beyond the scope of disposition. For example, counsel for [the grandmother] impermissibly questioned [a department] social worker . . . regarding [the respondent's] mental health and rehabilitation. . . . Later, counsel for [the grandmother] was permitted to object to counsel for [the respondent's] examination of . . . Humphrey regarding the issue of rehabilitation. . . . However, when counsel for [the grandmother] asked . . . Humphrey about [the

respondent's] mental health history, his examination was permitted despite objection from [the respondent's] counsel. . . . Likewise, counsel for [the grandmother's] objection regarding questions regarding treatment from [the respondent's] counsel to [a] social worker . . . was sustained by the court. . . . In each instance, [the grandmother] was permitted to participate in the adjudicatory phase of the trial." (Citations omitted.)

While there are two phases to a hearing on a termination of parental rights petition, adjudicatory and dispositional; see *In re Vincent D.*, 65 Conn. App. 658, 664, 783 A.2d 534 (2001); the two phases may be combined in a single, nonbifurcated proceeding. See *In re Jennifer W.*, 75 Conn. App. 485, 494, 816 A.2d 697, cert. denied, 263 Conn. 917, 821 A.2d 770 (2003); *In re Deana E.*, 61 Conn. App. 197, 205, 763 A.2d 45 (2000) ("A petition to terminate parental rights consists of two phases . . . . It is not necessary, however, that the two phases be the subject of separate hearings. One unified trial . . . is permissible." [Internal quotation marks omitted.]), cert. denied, 255 Conn. 941, 768 A.2d 949 (2001); see also Practice Book § 35a-7 (b).[18]

The respondent contends that this claim, because it implicates Practice Book 35a-4,[19] requires plenary

---

[18] Practice Book § 35a-7 (b) provides: "In the discretion of the judicial authority, evidence on adjudication and disposition may be heard in a nonbifurcated hearing, provided disposition may not be considered until the adjudicatory phase has concluded."

[19] Practice Book § 35a-4 provides: "(a) In making a determination upon a motion to intervene by any grandparent of the child or youth, the judicial authority shall consider: (1) the timeliness of the motion as judged by all the circumstances of the case; (2) whether the movant has a direct and immediate interest in the case.

"(b) Other persons including, but not limited to, siblings may move to intervene in the dispositional phase of the case, and the judicial authority may grant said motion if it determines that such intervention is in the best interest of the child or youth or in the interests of justice.

"(c) In making a determination upon a motion to intervene by any other person, the judicial authority shall consider: (1) the timeliness of the motion

review by this court.[20] Practice Book § 35a-4 (a) provides that "[i]n making a determination upon a motion to intervene by any grandparent of the child or youth, the judicial authority shall consider: (1) the timeliness of the motion as judged by all the circumstances of the case; (2) whether the movant has a direct and immediate interest in the case." Practice Book § 35a-4 (b), in the specific subsection on which the respondent relies, provides that "[o]ther persons including, but not limited to, siblings may move to intervene in the dispositional phase of the case, and the judicial authority may grant said motion if it determines that such intervention is in the best interest of the child or youth or in the interests of justice."

A reading of Practice Book § 35a-4 (a) and (b) reveals that the respondent's argument regarding the standard of review is fatally flawed. Her reliance on the limitation on intervenors to the dispositional phase found in Practice Book § 35a-4 (b) is misplaced because that subsection does not apply to grandparents. Accordingly, her claim regarding Practice Book § 35a-4 is without merit. We instead review the respondent's claim pursuant to

as judged by all the circumstances of the case; (2) whether the movant has a direct and immediate interest in the case; (3) whether the movant's interest is not adequately represented by existing parties; (4) whether the intervention may cause delay in the proceedings or other prejudice to the existing parties; (5) the necessity for or value of the intervention in terms of resolving the controversy before the judicial authority.

"(d) Upon the granting of such motion, such grandparent or other person may appear by counsel or in person. Intervenors are responsible for obtaining their own counsel and are not entitled to state paid representation by the chief child protection attorney.

"(e) When a judicial authority grants a motion to intervene in proceedings concerning a pending neglect or uncared for petition, the judicial authority may determine at the time of disposition of the petition whether good cause exists to permit said intervenor to participate in future proceedings as a party and what, if any further actions, the intervenor is required to take."

[20] Claims that require us to construe our rules of practice do involve the plenary standard of review and such rules are construed in the same manner as statutes. *In re A.R.*, 123 Conn. App. 336, 339, 1 A.3d 1184 (2010).

the abuse of discretion standard. *In re Vincent D.*, supra, 65 Conn. App. 664.

We have reviewed the transcript and considered the instances in which the respondent claims that the court improperly permitted the grandmother to participate in the adjudicatory phase. We note that, in the instances in which the respondent actually objected on the basis of the grandmother's participation in adjudicatory issues, the court ruled that the grandmother's participation went to the dispositional phase. In her brief, the respondent has failed to indicate why these rulings were improper. Accordingly, we conclude that because the respondent has failed to establish that the court abused its discretion, this claim fails.

The judgments are affirmed.

In this opinion the other judges concurred.