******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE MINDY F.*
(AC 36720)

DiPentima, C. J., and Sheldon and Dupont, Js.

*Argued September 15—officially released November 20, 2014***

(Appeal from Superior Court, judicial district of New Haven, Juvenile Matters, Cronan, J.)

*David J. Reich*, for the appellant (respondent mother).

*Renée Bevacqua Bollier*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Benjamin Zivyon*, assistant attorney general, for the appellee (petitioner).

*Thomas B. Pursell*, for the minor child.

*Opinion*

DiPENTIMA, C. J. The respondent mother, Cindy T. (mother), appeals from the judgment of the trial court terminating her parental rights as to her daughter, Mindy F.[1] On appeal, the mother raises a single claim. Specifically, she argues that the court improperly made a dispositional finding as to the best interest of the child before the conclusion of the adjudicatory phase of the termination trial by deciding that issue in and for the purpose of approving a permanency plan. She further argues that she had no opportunity to present evidence and arguments in opposition to the plan. The mother contends that this premature finding violated her due process rights and the mandate of Practice Book § 35a-7 (b) because it created "an appearance of impropriety" on the part of the court that tainted the entire termination trial. Although we agree with the mother that it was improper for the court to approve the permanency plan before hearing all the evidence, we conclude that she was not thereby deprived of a fair trial in the termination proceedings. Accordingly, we affirm the judgment of the trial court.[2]

The record reveals the following relevant facts and procedural history. On April 15, 2011, the petitioner, the Commissioner of Children and Families (commissioner), filed a neglect petition alleging that Mindy was being denied proper care and was being permitted to live under conditions injurious to her well-being. Mindy, who was born in January, 2010, was approximately fourteen months old at the time. On September 2, 2011, the commissioner filed a motion for temporary custody, alleging that Mindy had been injured as a result of an automobile accident.[3] The commissioner further alleged that the mother, who was a passenger in the car at the time of the accident, had been under the influence of alcohol at that time. The court granted the motion and issued specific steps for the mother for reunification. She was advised of the need to comply with the specific steps.

Mindy was adjudicated neglected by the court on December 6, 2011,[4] and was committed to the care and custody of the commissioner on March 5, 2012. On June 1, 2012, the commissioner filed a motion to review the permanency plan for Mindy that called for the termination of the mother's parental rights and her subsequent adoption (initial permanency plan). The court approved the initial permanency plan on August 6, 2012, and ordered the commissioner to file a petition for termination of parental rights within sixty days. On October 5, 2012, the commissioner filed a termination petition. The termination proceedings began on September 9, 2013, and then continued on September 10 and 12, 2013, and January 15 and 29, 2014.

On May 3, 2013, the commissioner filed a second

motion to review the permanency plan, as mandated by law (second permanency plan).[5] No action, however, was taken on the motion until January 29, 2014, when the commissioner requested that the court approve the second permanency plan. At that point in the proceedings, the commissioner had rested, and the mother had not yet begun to present her evidence. Before making its ruling, the court inquired whether "anyone want[ed] to be heard on the [second permanency] plan." In response, the mother stated to the court that she objected to the plan.[6] Thereafter, the court overruled the mother's objection and approved the second permanency plan.

At the conclusion of the proceedings, the court issued a memorandum of decision, outlining its findings. As to the adjudicatory phase of the proceedings, the court found that the commissioner had proven by clear and convincing evidence that the Department of Children and Families (department) "ha[d] made reasonable efforts to reunify the family, but that the [mother is] unwilling or unable to fully benefit from reunification services at this time." In addition, the court found that the mother had "failed to achieve the degree of personal rehabilitation that would foster the belief that within a reasonable period of time, considering the age and needs of the child, [she] could assume a responsible position in the child's life."

As to the dispositional phase of the proceedings, the court considered and made written findings pursuant to General Statutes § 17a-112 (k). Specifically, the court found that the department had made reasonable efforts to reunite Mindy with the mother, and that the services offered were both "timely and extensive." The court also concluded that the mother's compliance with the specific steps had been "marginal." In addition, the court determined that Mindy had been residing with her foster family since September, 2011, and that her emotional attachment to her parents was "unclear." Ultimately, the court concluded that clear and convincing evidence established that the termination of the mother's parental rights was in the best interest of Mindy. This appeal followed.

On appeal, the mother argues that the court violated her due process rights by making dispositional findings regarding the best interest of Mindy when it approved the second permanency plan before the conclusion of the adjudicatory phase of the termination trial. The mother further asserts that this premature finding was in violation of Practice Book § 35a-7 (b). We disagree.

The following legal standards and practices will help facilitate our discussion. "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. . . . If the trial court determines that a statutory ground for termination exists [by clear and convincing evidence], it proceeds to the

dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interest of the child." (Citation omitted; internal quotation marks omitted.) *In re Roshawn R.*, 51 Conn. App. 44, 52, 720 A.2d 1112 (1998). Practice Book § 35a-7 (b) allows a trial court to combine both phases of the termination proceeding into a single hearing, but specifies that "disposition may not be considered until the adjudicatory phase has concluded." As a result, the two phases frequently are consolidated into a single hearing. See, e.g., *In re Alison M.*, 127 Conn. App. 197, 226, 15 A.3d 194 (2011). In some instances, termination proceedings can overlap with the federally mandated annual review of a permanency plan. See, e.g., *In re Kyara H.*, 147 Conn. App. 855, 857 n.1, 83 A.3d 1264, cert. denied, 311 Conn. 923, 86 A.3d 468 (2014); see also footnote 5 of this opinion. Unlike termination proceedings, which are subject to the clear and convincing evidence standard of proof, permanency plans are reviewed and approved by the courts employing the preponderance of the evidence standard. See Practice Book § 35a-14 (d). Despite the lower standard of proof, the approval of a permanency plan by the court involves a finding that the proposed plan is in the best interests of the child. Id. The practical result of these multiple legal requirements is that, once termination proceedings and the review of a permanency plan have been consolidated, the court should refrain from making any dispositional findings until the close of the evidence.

In this case, the commissioner filed the motion to review the second permanency plan on May 3, 2013. As with the initial permanency plan, the second permanency plan called for termination of the mother's parental rights and for adoption of Mindy. In the motion, the commissioner requested the court's approval of the plan, arguing that it was based on the best interests of Mindy to do so. To support the second permanency plan, the commissioner supplemented the motion with a social study that had been conducted by the department. The hearing on the plan was consolidated with the termination proceedings; however, the court approved the second permanency plan before the close of the evidence in the termination case.

Having reviewed the record, we conclude that the mother's claim was not preserved properly because, by not objecting to the procedure, she failed to bring this matter to the attention of the court during the trial. On appeal, the mother claims that the court's error is reversible under the plain error doctrine. Alternatively, the mother asks us to review her claim under the test adopted by our Supreme Court in *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

Practice Book § 60-5 provides in relevant part that the reviewing court "may in the interests of justice notice plain error not brought to the attention of the

trial court." "[P]lain error review is reserved for truly extraordinary situations where the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [An appellant] cannot prevail under [the plain error doctrine] . . . unless [she] demonstrates that the claimed error is both so clear and so harmful that a failure to reverse the judgment would result in manifest injustice." *In re Justice V.*, 111 Conn. App. 500, 508, 959 A.2d 1063 (2008), cert. denied, 290 Conn. 911, 964 A.2d 545 (2009).

"[Our Supreme Court] has held a trial court's failure to follow the mandatory provisions of a statute prescribing trial procedures is plain error. . . . The failure to follow a procedural rule is similarly erroneous." (Citation omitted.) *State* v. *Pina*, 185 Conn. 473, 482, 440 A.2d 962 (1981). Practice Book § 35a-7 (b) provides: "In the discretion of the judicial authority, evidence on adjudication and disposition [in a termination trial] may be heard in a nonbifurcated hearing, provided disposition may not be considered until the adjudicatory phase has concluded." In her brief to this court, the mother argues that the "substance of the permanency plan finding is essentially the same as the finding in the termination petition, which is that it would be in the best interest of the child to terminate parental rights at this time." (Internal quotation marks omitted.) Because the "dispositional findings on the permanency plan and the dispositional findings on the termination petition are indistinguishable," the mother reasons, the court should not have approved the plan until the conclusion of the adjudicatory phase of the termination trial, as required by Practice Book § 35a-7 (b). We are not persuaded.

In this case, the termination proceedings and the approval of the permanency plan, although consolidated, remained distinct and independent from each other. The termination proceedings were initiated pursuant to the initial permanency plan approved by the court on August 6, 2012. The mother concedes that the progress of the termination proceedings, however, was not contingent on the court's decision whether to approve the second permanency plan. Additionally, the mother does not dispute that, in order to approve the second permanency plan, the court had to find that the plan was in Mindy's best interests by a preponderance of the evidence, whereas the termination of the mother's parental rights, on the other hand, required findings made by the higher standard of proof, namely, clear and convincing evidence. It is also not disputed that the approval of the permanency plan did not end the termination proceedings. To the contrary, the termination trial continued thereafter, with all parties, including the mother, afforded an opportunity to present evidence and arguments on the issue of the best interest of Mindy to the court. Only after all of the parties involved in the case had rested did the court reach its decision to

terminate the mother's parental rights. In light of the foregoing, we are convinced that the best interests finding required for approval of a permanency plan is distinguishable from the finding required in terminating a parent's rights. We conclude therefore that the court's best interests finding in approving the permanency plan is not a dispositional finding of the sort prohibited by Practice Book § 35a-7 (b).

We also reject the mother's claim that the court's approval of the plan constituted "an endorsement of the termination petition" that in effect "cast[ed] a shadow over the court's impartiality and the perception that the [mother] received a fair trial."[7] In her brief to this court, the mother does not direct us to any evidence, and our review of the record uncovered none, showing that the court referred to or relied on its prior best interests determination in approving the permanency plan as a basis for making its ultimate best interest determination in the termination trial. Moreover, the mother does not dispute the court's findings substantiating the termination of her parental rights, and, having reviewed the record, we are convinced that these findings were supported by the evidence.[8] Thus, the court's premature approval of the plan did not result in the manifest injustice in the termination trial that requires the application of the plain error doctrine.

Similar reasoning leads us to conclude that the mother's claim must fail under the third prong of the *Golding* test.[9] Our conclusion that there is no clear constitutional violation and the mother was not deprived of a fair trial is supported by the following previously discussed factors. The termination trial was initiated under the initial permanency plan approved in August, 2012. The termination trial and the hearing on the approval of the second permanency plan were distinct and independent proceedings. The approval of the second permanency plan was not necessary to continue the termination trial and required the application of a lower standard of proof. The approval of the second permanency plan did not stop the termination trial, and the mother was able to present her evidence and arguments on the issue of the best interest of Mindy in opposition to the proposed termination of her parental rights. The termination of the mother's parental rights was based on findings meeting the higher standard of clear and convincing evidence. There is no evidence in the record to establish that the court relied on its prior determination as to Mindy's best interests, made in approving the second permanency plan, when making its ultimate best interest determination during the termination trial. Finally, the mother does not dispute the court's findings that the termination of her parental rights was in the best interest of Mindy. Therefore, she was not deprived of a fair trial, and her claim must fail.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** November 20, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The court also terminated the parental rights of Mindy's father, Jason F., during the same proceedings. The father, however, challenged the trial court's decision in a separate appeal. See *In re Mindy F.*, 153 Conn. App. , A.3d (2014).

[2] Although we agree with the mother that it was improper for the court to approve the proposed permanency plan before the evidence had concluded, we do not agree with her rationale. As we have concluded in the father's appeal, also released today, it was improper for the court to approve the proposed permanency plan without a full evidentiary hearing because General Statutes § 46b-129 (k) (1) mandates that a "court shall hold evidentiary hearings in connection with any contested motion for review of the permanency plan." See *In re Mindy F.*, supra, 153 Conn. App. .

[3] There was testimony at trial that, as a result of this accident, Mindy sustained a physical trauma that required constant medical monitoring.

[4] The court granted the commissioner's motion to amend the neglect petition to include the circumstances surrounding the accident.

[5] The statutes governing permanency plans were adopted to comply with federal law regulating state access to federal funding for children who have been removed from their parents. *In re Darien S.*, 82 Conn. App. 169, 174, 175–76, 842 A.2d 1177, cert. denied, 269 Conn. 904, 852 A.2d 733 (2004). In order to continue to receive federal funds, Congress requires states to review permanency plans every twelve months. 42 U.S.C. § 622 (a) and (b) (8) (A) (ii) (2012). In addition, Congress also requires states to "make specific choices about the appropriate permanent placement of children in their care by specifying whether the child will be returned to a parent, placed for adoption, placed with a relative, referred to legal guardianship or, if a compelling reason is shown, placed in another planned permanent living arrangement." *In re Darien S.*, supra, 175. These and other federal requirements were implemented by our legislature in General Statutes § 46b-129.

[6] The father as well as the paternal great aunt, who were parties to the proceedings, also stated that they objected to the second permanency plan.

[7] To the extent that the mother's claim suggests judicial bias, we express our disapproval of making such an unsupported claim that was never raised to the trial court. See *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 316, 991 A.2d 666, cert. denied, 297 Conn. 906, 995 A.2d 634 (2010).

[8] In its memorandum of decision, the court concluded that the mother failed to achieve the degree of personal rehabilitation that would foster the belief that within a reasonable period of time, considering the age and needs of the child, she could assume a responsible position in Mindy's life, reasoning: "[S]he appeared to pick and choose compliance with the court ordered steps. . . . [She] denied needing any mental health or parenting services. [She also denied having] dangerous levels of refuse and clutter [in her house] . . . ." The court also found that, although the department "provided a number of services including substance abuse [counseling] and parenting assistance . . . [the mother] provided a common response in that she didn't see the need for them." In addition, the court found that the termination of parental rights was in Mindy's best interest because she "has a safe, secure bond and attachment to her current caregivers and . . . removal from their care would be traumatic . . . ."

[9] Pursuant to *Golding*: "[An appellant] can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the [appellant] of a fair trial; and (4) if subject to harmless error analysis, the [appellee] has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the [appellant's] claim will fail. The appellate tribunal is free, therefore, to respond to the [appellant's] claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40.