******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

IN RE ZEN T.*
(AC 36083)

Gruendel, Beach and Harper, Js.

*Argued March 6—officially released March 28, 2014***

(Appeal from Superior Court, judicial district of
Hartford, Juvenile Matters, Gleeson, J.)

*Heather S.*, self-represented, the appellant (respondent mother).

*Amor C. Rosario*, assistant attorney general, with
whom, on the brief, were *George Jepsen*, attorney general,
and *Benjamin Zivyon*, assistant attorney general,
for the appellee (petitioner).

*Lisabeth B. Mindera*, counsel for the minor child.

*Opinion*

GRUENDEL, J. The respondent mother, Heather S., appearing as a self-represented party, appeals from the judgment of the trial court terminating her parental rights as to her minor child, Zen T.[1] On appeal, the respondent claims that she was denied effective assistance of counsel and was thereby prejudiced. We disagree and, accordingly, affirm the judgment of the trial court.

The record discloses the following relevant factual and procedural history. In March, 2012, the respondent and Cory T. brought the child, who was less than three months old, to the emergency room because his left leg was swollen. An X-ray, CAT scan, and MRI were conducted, which revealed that "[the child] had sustained at least eight fractures, two additional long bone irregularities . . . as well as bilateral chronic subdural hematomas, for a total of eleven injuries. These injuries occurred on multiple occasions over a time period of at least three weeks." In addition, "[a]ll of the injuries resulted from trauma which could not have occurred during the normal handling of an infant; nor could [the child], who at three months of age was unable to stand, crawl, or even roll over, have accidently injured himself."

The petitioner, the Commissioner of Children and Families, thereafter filed a petition with the court, requesting that the parental rights of the respondent be terminated. "The statutory ground alleged in the petition against the respondent mother is that the child has been denied, by reason of an act or acts of parental commission or omission, including, but not limited to, sexual molestation or exploitation, severe physical abuse or a pattern of abuse, the care, guidance, or control necessary for the child's physical, educational, moral, or emotional well-being, [pursuant to] General Statutes § 17a-112 (j) (3) (C). The matter was tried to the court . . . . The respondent mother was present and was represented at trial by counsel. . . . The petitioner called nine witnesses and introduced twenty exhibits. [The respondent] called nine witnesses, testified in her own behalf and introduced twenty-one exhibits."

After the trial concluded, the court held that the petitioner proved, by clear and convincing evidence, that: (1) the Department of Children and Families (department) made reasonable efforts to reunify the family, as required by § 17a-112 (j) (1); (2) termination was in the best interest of the child, pursuant to § 17a-112 (j) (2); and (3) with respect to § 17a-112 (j) (3) (C), the child's various fractures and hematomas were serious physical injuries that were nonaccidental or were otherwise inadequately explained. The court further found that all seven grounds for termination delineated in § 17a-

112 (k)[2] existed. It then ordered the termination of the respondent's parental rights. This appeal followed.

The respondent claims that she was denied effective assistance of counsel and was prejudiced as a result of this ineffectiveness. She therefore concludes that the case should be remanded for a new trial. We disagree.

"Ordinarily, we would not review the respondent's claim because it was not raised at trial, and, therefore, the record is inadequate to review the claim. . . . The evidence on the face of the record, however, demonstrates that the respondent was not prejudiced by the representation she received at the termination of parental rights trial. The respondent's claim, therefore, fails." *In re Dylan C.*, 126 Conn. App. 71, 90–91, 10 A.3d 100 (2011).

"In Connecticut, a parent who faces the termination of his or her parental rights is entitled, by statute, to the assistance of counsel. . . . Because of the substantial interests involved, a parent in a termination of parental rights hearing has the right not only to counsel but to the effective assistance of counsel. . . . *In re Alexander V.*, 223 Conn. 557, 569, 613 A.2d 780 (1992).

"In determining whether counsel has been ineffective in a termination proceeding, we have enunciated the following standard: The range of competence . . . requires not errorless counsel, and not counsel judged ineffective by hindsight, but counsel whose performance is reasonably competent, or within the range of competence displayed by lawyers with ordinary training and skill in [that particular area of the] law. . . . The respondent must prove that [counsel's performance] fell below this standard of competency and also that the lack of competency contributed to the termination of parental rights. . . . A showing of incompetency without a showing of resulting prejudice . . . does not amount to ineffective assistance of counsel." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) *In re Dylan C.*, supra, 126 Conn. App. 91. "In making such a claim, it is the responsibility of the respondent to create an adequate record pointing to the alleged ineffectiveness and any prejudice the respondent claims resulted from that ineffectiveness." *In re Christopher C.*, 129 Conn. App. 55, 59, 20 A.3d 689 (2011). "In the absence of findings by the trial court in this regard, we directly review the trial court record." *In re Jah'za G.*, 141 Conn. App. 15, 36, 60 A.3d 392, cert. denied, 308 Conn. 926, 64 A.3d 329 (2013).

The respondent claims that her trial counsel was ineffective because (1) he was unprepared to adequately analyze and challenge the methods of evaluation and conclusions drawn by the forensic psychologist who evaluated the respondent and testified as an expert witness at trial;[3] (2) he failed to request a continuance to secure reasonable time to prepare the case or a

meaningful defense;[4] (3) he missed the deadline for disclosure of evidence;[5] (4) he required the respondent to write her own questions when she chose to testify;[6] (5) he failed to correct the record of statements she previously made to the department;[7] and (6) he wrote in his brief that the department made reasonable efforts to reunify the child with her.[8]

In the present case, we need not decide whether the respondent's counsel provided assistance that fell below that of lawyers with ordinary training in termination of parental rights cases because the respondent has not demonstrated that her trial counsel's representation resulted in prejudice to her. In order to demonstrate prejudice, the respondent has the "burden of proving that any alleged inadequacy of counsel could have affected the outcome of the termination proceedings." *In re Mariah S.*, 61 Conn. App. 248, 269, 763 A.2d 71 (2000), cert. denied, 255 Conn. 934, 767 A.2d 104 (2001).

The respondent does not specify in her brief how any of the alleged deficiencies by her counsel resulted in prejudice to her. She makes only conclusory statements, for example, stating that her counsel's deficiencies "changed the perception of the trial court judge and ultimately the outcome of the case." Bald assertions such as these are not enough to prove prejudice. The respondent was required to demonstrate that the outcome of the case—the judgment terminating her parental rights—would have been different had the alleged ineffectiveness of her counsel not occurred. She failed to do just that. To the contrary, the record reveals that any alleged ineffectiveness of her counsel did not result in prejudice because there was overwhelming evidence that supported the court's judgment. First, the respondent's parental rights were terminated on the strength of the petitioner's case that the child suffered serious physical injuries and that those injuries were not adequately explained by the respondent, pursuant to § 17a-112 (j) (3) (C). Moreover, as set forth in § 17a-112 (j) (3) (C), "nonaccidental or inadequately explained serious physical injury to a child shall constitute prima facie evidence of acts of parental commission or omission sufficient for the termination of parental rights."

Furthermore, the court "examined multiple relevant factors [in making its decision] including the child's interests in physical safety, sustained growth, development, well-being, stability and continuity of his environment; his length of stay in foster care; the nature of his relationship with his biological parents; the degree and quality of contact maintained with his biological parents; and his genetic bond to the respondents. The court . . . also balanced this child's crucial need for physical safety, emotional stability, validation, consistency and permanency against the potential benefit of maintaining a connection with his biological parents." After considering each of these factors, the court determined that

it was in the best interests of the child to terminate the respondent's parental rights.

"Moreover, our Supreme Court has indicated . . . that the trial judge is a minister of justice rather than strictly an umpire in a forensic encounter . . . . Although as a trial judge must adhere to dictates of impartiality, he or she, nevertheless, has the duty to deter and correct misconduct of attorneys with respect to their obligations as officers of the court to support the authority of the court and enable the trial to proceed with dignity. . . . Thus, a judge presiding over a proceeding wherein trial counsel had been woefully inadequate would not, consistent with judicial duty sit idly by and permit the client to suffer the consequences. To be sure, the trial judge may be more inclined to vigilance in solemn proceedings, such as those terminating parental rights, wherein the indigent litigants have obtained court-appointed counsel. . . . *In re Jonathan M.*, 255 Conn. 208, 234, 764 A.2d 739 (2001)." (Internal quotation marks omitted.) *In re Dylan C.*, supra, 126 Conn. App. 92–93. Nowhere in its memorandum of decision or in the transcript of the trial did the court give any indication that the respondent was not receiving effective assistance of counsel. And, the respondent has not identified where in the record that she alerted the court to her dissatisfaction with counsel. See id.

After reviewing the respondent's claim of ineffective assistance of counsel and resultant prejudice, we conclude that the respondent did not meet her burden of demonstrating that any alleged inadequacy of counsel prejudiced her in a way that affected the outcome of the termination proceeding. See *In re Mariah S.*, supra, 61 Conn. App. 269. In light of the foregoing reasons, the respondent's ineffective assistance of counsel claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79a-12, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

** March 28, 2014, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The respondent father, Cory T., tendered a signed written consent to terminate his parental rights to the court. The court thereafter canvassed the father and found that his consent was knowing, voluntary, and with a full understanding of all the consequences. It then accepted his consent and terminated Cory T.'s parental rights to the child. Cory T. is not a party to this appeal. Accordingly, we refer in this opinion to Heather S. as the respondent.

[2] General Statutes § 17a-112 (k) provides in relevant part: "[I]n determining whether to terminate parental rights under this section, the court shall consider and shall make written findings regarding: (1) The timeliness, nature and extent of services offered, provided and made available to the parent and the child by an agency to facilitate the reunion of the child with the parent; (2) whether the Department of Children and Families has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980, as amended; (3) the terms of any applicable court order entered into and agreed upon by any individual or

agency and the parent, and the extent to which all parties have fulfilled their obligations under such order; (4) the feelings and emotional ties of the child with respect to the child's parents, any guardian of such child's person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties; (5) the age of the child; (6) the efforts the parent has made to adjust such parent's circumstances, conduct, or conditions to make it in the best interest of the child to return such child home in the foreseeable future . . . and (7) the extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parent."

[3] The psychologist's "report indicate[d] that although [the respondent] did not show signs of mental illness, [she] showed indications of substantial psychological problems, which would prevent her from safely caring for an infant." The respondent claims that she "did not have any unresolved and significant psychological issues and if those issues did not actually preclude the possibility of her safe reunification with [the child], then [she] has been prejudiced by counsel's failure to adequately prepare for or challenge the psychologist's testimony." (Internal quotation marks omitted.)

[4] Since her counsel did not request a continuance, the respondent claims that he did not adequately prepare for trial and that she was therefore deprived of a meaningful defense of psychological fitness, a defense she claims "could have been a solid defense if it was diligently pursued."

[5] The respondent claims that she was prejudiced when her trial counsel missed the deadline to disclose evidence, stating that "several powerful pieces of evidence were never brought to light that would surely have changed the perception of the trial court judge and ultimately the outcome of the case." She states that this evidence included a calendar of "many things in order to watch [the child] and his diagnosed colic and acid reflux," which would have "disproven certain allegations by the paternal grandparents and . . . given more credibility . . . to the [respondent's] belief of mental abuse by the paternal grandmother . . . ."

[6] She claims prejudice in this instance because her trial counsel insisted that she write her own questions if she chose to testify. The respondent states that this action "left an impression on the court of not having the proper respect for his client" and forced her to be her own trial counsel at a crucial time in the trial "knowing that she had a criminal case of neglect pending where all things in these proceedings could be used against her in criminal court."

[7] The respondent claims that when her counsel failed to correct her statements, she was unable to give her side of the story.

[8] The respondent asserts on appeal that she believed that her case was mismanaged because of "altered forms, misleading notes and accepting bias[ed] statements without lending the [respondent] the opportunity to share her side of the story." The respondent, however, has failed to challenge any of the trial court's findings regarding the reasonableness of the department's efforts, and therefore this specific instance of her ineffective assistance of counsel claim is moot. See *In re Alison M.*, 127 Conn. App. 197, 205–206, 15 A.3d 194 (2011) (review of respondent's challenge to finding that she was unable to benefit from reunification services was moot because she failed to challenge trial court's finding that department made reasonable efforts to reunify her with children). As our Supreme Court has noted, "it is not the province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow." (Emphasis omitted; internal quotation marks omitted.) *In re Jorden R.*, 293 Conn. 539, 556, 979 A.2d 469 (2009).